**ATLANTIC RICHFIELD COMPANY,**
**Plaintiff,**

v.

**AMERICAN AIRLINES, INC.,**
**et al., Defendants.**

Nos. 89–C–868B, 89–C–869–
B and 89–C–859–B.

United States District Court,
N.D. Oklahoma.

Aug. 3, 1993.

Linda S. Peterson, Larry G. Gutterridge, Thomas A. McWatters, Los Angeles, CA, for plaintiff.

Claire V. Eagan, Susan L. Gates, Michael D. Graves, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, for defendant group 1—Sand Springs Superfund PRP Group.

William C. Anderson, and Russell W. Kroll, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, OK, for defendant group 2—Owners/Non–Operator Lessees.

Steven M. Harris and Michael D. Davis, Doyle & Harris, Tulsa, OK, for defendant group 3—Operators.

John H. Tucker, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, OK, for defendant group 4—Non–Group Generators/Transporters.

Bradley S. Bridgewater, U.S. Dept. of Justice, Denver, CO, and David M. Thompson, U.S. Dept. of Justice, Environmental and Natural Resources Div., Washington, DC, for defendant group 5—U.S.

## ORDER

BRETT, District Judge.

Now before the Court is the Report and Recommendation of the U.S. Magistrate Judge (Docket # 642) filed March 3, 1993, pertaining to the Plaintiff's Motion for Determination of Good Faith Settlement (Docket # 259) and the Defendants' Memorandum Regarding the Proper Settlement Bar Rule (Docket # 270). Defendant Groups I, III and V have objected to the Magistrate's Report and Recommendation which concludes that the *pro tanto* credit rule should be applied in this case.

The Plaintiff asks the Court to bar any and all claims by non-settling Defendants against settling Defendants for contribution or indemnity associated with liability for clean-up of the hazardous wastes disposed at the Sand Springs Petrochemical Complex Superfund Site ("Site") and asks the Court to apply the *pro tanto* credit rule to any future recovery against non-settling Defendants. No party resists the imposition of a contribution bar with respect to settling defendants; however, Defendant Groups I, III and V argue that the Court should apply the proportionate credit rule rather than the *pro tanto* credit rule to any future recovery against non-settling defendants.

The procedural history and background of this case are sufficiently detailed in the Findings of Fact and Conclusions of Law filed simultaneously herewith and thus such Findings and Conclusions shall be incorporated as though fully set out in this Order.

The issue before the Court is the proper credit rule to apply to any future recovery against non-settling defendants. A number of courts have discussed the application of the *pro tanto* and proportionate credit rules as they apply to cases brought pursuant to the Comprehensive Environmental, Response, Compensation, and Liability Act ("CERCLA"). *See* Magistrate's Report and Recommendation of March 3, 1993, pp. 6–7. The *pro tanto* approach is contained in the Uniform Contribution Among Tortfeasors Act (UCATA), which provides contribution protection to all settling parties and reduces the amount of the non-settling parties' liability by the dollar amount of the settlements.

This approach requires the Court to conduct a "fairness hearing" prior to approving a partial settlement.

The proportionate approach is used in the Uniform Comparative Fault Act (UCFA) to handle partial settlements. This approach results in the reduction of the plaintiff's claim by the percentage of the settling defendant's causal fault, which must be determined at trial, where total damages and the percentage of the settling defendants' proportionate fault are found.

The Magistrate's Report and Recommendation includes a thorough explanation of the development of the case law and discusses the practical and policy considerations relevant to this issue. The Magistrate concluded that the application of the proportionate or *pro tanto* approach is a matter left to the Court's discretion and should be determined on a case by case basis in an effort to both reach an equitable result and further the goals of CERCLA. The Magistrate concluded that the *pro tanto* rule "is clearly superior" under the facts of this case and should be applied herein. This Court agrees.

The Court reviews the issue of the proper credit rule on a *de novo* basis. 28 U.S.C. § 636(b)(1)(C).

Prior to 1986, CERCLA did not include a provision dealing with settlements or the proper apportionment methodology to be used when plaintiffs entered into partial settlements. *United States v. Conservation Chemical Co.,* 628 F.Supp. 391 (W.D.Mo. 1985).[1] Congress subsequently provided some guidance on the issue in the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. 99–499, § 113(f), which provides in pertinent part:

(1) Contribution

Any person may seek contribution from any other person who is liable or potentially liable under section 107(a), during or following any civil action under section 106 or under section 107(a). Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. . . . .

(2) Settlement

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

This amendment clearly adopted the contribution bar and *pro tanto* credit rule for administrative or judicially approved settlements involving the United States or a State. However, it did not explicitly provide which credit rule should be applied to settlements when the cost recovery action is brought by a private party, rather than the United States or a State.

Several courts have continued to follow the analysis and reasoning of *Conservation Chemical* and have applied the proportionate credit rule to settlements involving private parties, despite Congress' express adoption of the *pro tanto* rule for partial settlements with the government. *E.g. Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651 (D.C.Ill.1987), *aff'd* 861 F.2d 155 (7th Cir.1988); *Lyncott Corp. v. Chemical Waste Management,* 690 F.Supp. 1409 (E.D.Pa.1988); and *United States v. Western Processing Co., Inc.,* 756 F.Supp. 1424 (W.D.Wash.1990). These courts concluded that Congress only intended for the *pro tanto* rule to be applied in actions brought by the Government and that policy and practical considerations still favored the application of the proportionate rule in actions brought by private parties.[2]

---

**1.** In *Conservation Chemical* the court recognized that CERCLA was silent on the subject of apportionment methodology but concluded that the proportionate approach of the UCFA was most consistent with Congress' intent in drafting CERCLA.

**2.** Several of the Courts listed the "extensive fairness hearings" required by the *pro tanto* ap-

Other courts have viewed the passage of SARA as an indication that Congress has rejected the UCFA approach and the proportionate credit rule. *Allied Corp. v. Frola,* 730 F.Supp. 626 (D.N.J.1990); *United States v. Cannons Engr. Corp.,* 720 F.Supp. 1027 (D.C.Mass.1989), *aff'd,* 899 F.2d 79 (1st Cir. 1990); and *United States v. Rohm & Haas Co.,* 721 F.Supp. 666 (D.N.J.1989). Neither the Tenth Circuit Court of Appeals nor this Court has yet addressed the issue of the proper credit rule to be applied in CERCLA cases brought by private parties.

■ Although the majority of Courts that have been faced with this issue have applied the proportionate rule, this Court concludes that it has the discretion to apply the credit rule which under the facts of the instant case will best achieve the overriding objectives of CERCLA. Upon consideration of all the facts and circumstances of this particular case, the Court concludes the *pro tanto* rule is superior to the proportionate rule in this instance.

The Magistrate Judge and the Settlement Judge have thoroughly compared the proportionate and *pro tanto* credit rules and have concluded that under the facts of this case, the *pro tanto* rule would better facilitate settlement. *See* Magistrate's Report and Recommendation of March 3, 1993, and Settlement Judge's letter attached thereto. This Court agrees.

Adoption of the proportionate rule in this case would substantially complicate Plaintiff's trial task[3] and expose Plaintiff to the risk of a less than full recovery.[4] On the other hand, adoption of the *pro tanto* approach in this case will assure Plaintiff of a full recov-

ery and apparently will not leave the non-settling defendants with an inequitable share of the costs.[5] The Court does not share Defendants concern that application of the *pro tanto* rule will result in the non-settling defendants being assessed an inequitable portion of the response costs.

Furthermore, the prospect of conducting "fairness hearings" does not dissuade this Court from applying the *pro tanto* credit rule in this case. The Court has conducted an evidentiary hearing on the fairness of the ARCO/Sand Springs Home settlement and has concluded that the settlement was in good faith and is fair to the non-settling defendants. The Court has also previously found that the *de minimis* settlements were entered into in good faith and with certain minor exceptions, the parties have stipulated the *de minimis* settlements were fair. Although "fairness hearings" do take the Court's time, they also simplify trial.

In summary, the Court concludes the selection of the proper credit rule is a matter that has been left to the Court's discretion, to be evaluated on a case-by-case basis. In this particular instance, the Court concludes application of the *pro tanto* rule will best achieve the objectives of CERCLA by encouraging settlement, simplifying trial and equitably distributing cost. For all the reasons stated herein, the Court hereby AFFIRMS the Report and Recommendation of the Magistrate Judge filed March 3, 1993, and adopts the *pro tanto* credit rule in this case.[6]

The trial schedule is hereby amended and the pre-trial conference is hereby reset as follows:

proach as a significant practical consideration favoring the use of the proportionate approach.

3. Plaintiff would be in the awkward position at trial of minimizing its damages caused by the approximately 300 parties that have settled to date and maximizing its damages caused by the remaining defendants.

4. Adoption of the proportionate rule at this point in the case would also present the Plaintiff with the strong possibility of recovering substantially more than its cost, i.e. a windfall, due to the apparent "overpayments" of the *de minimis* settling parties. This potential for a substantial

windfall might encourage the Plaintiff to discontinue settlement efforts and gamble on a successful trial.

5. Absent significant unanticipated future costs, it appears the non-settling generator defendants will pay substantially less per gallon than was paid by the *de minimis* settling defendants. *See* Court's Findings of Fact No. 31 filed this date.

6. The Court is genuinely appreciative of the considerable time and outstanding dedicated judicial service of Magistrate Judge John Wagner and Adjunct Settlement Judge Martin Frey herein.

| | |
|---|---|
| September 17, 1993 | COMPLETE ALL DISCOVERY; |
| September 3, 1993 | EXCHANGE THE NAMES AND ADDRESSES OF ALL WITNESSES, INCLUDING EXPERTS, IN WRITING, ALONG WITH A BRIEF STATEMENT REGARDING EACH WITNESS' EXPECTED TESTIMONY (UNNECESSARY IF WITNESS' DEPOSITION TAKEN); |
| September 20, 1993 | FILE ANY MOTIONS IN LIMINE |
| September 22, 1993 | FILE AN AGREED PRETRIAL ORDER AND EXCHANGE ALL PRENUMBERED EXHIBITS; |
| September 24, 1993 at 1:30 p.m. | FINAL PRE-TRIAL CONFERENCE |
| October 12, 1993 | FILE SUGGESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ANY TRIAL BRIEFS; |
| October 18, 1993 | NON-JURY TRIAL AT 9:30 A.M. |

IT IS SO ORDERED.

## *REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE*

WAGNER, United States Magistrate Judge.

This report and recommendation pertains to plaintiff's Motion for Determination of Good Faith Settlement (Docket # 259),[1] asking the court to bar any and all claims by non-settling Defendants against settling Defendants for contribution or indemnity associated with liability for clean-up of the hazardous wastes disposed at the Sand Springs Petrochemical Complex Superfund Site ("Site").[2]

### *Procedural History*

In 1988, Plaintiff entered into a Consent Decree with the United States of America, under which it agreed to perform contamination remedies at the Site and to reimburse the government for the costs of overseeing such remedial actions. Plaintiff, in turn, filed the three actions in this court, which have now been consolidated, to recover its costs from defendants who are allegedly responsible for the wastes. The original three consolidated cases included over 150 defendants and approximately 250 more were subsequently added.

The parties, with the assistance of the court, drafted a Case Management Order (Docket # 88) and First Amended Case Management Order (Docket # 194), dividing the defendants into groups based on whether they were generators, owners, or operators, assigning lead counsel to represent each group, and appointing a single liaison counsel as an administrator, a settlement co-ordinator, and a settlement judge. Cooperation among defendants for the purpose of coordinating discovery, trial, sharing counsel and otherwise minimizing expenses in the litigation was ordered by the court to facilitate resolution of the case. Lead counsel were ordered to coordinate motion practice to reduce filings and lessen the burden on the court of considering such motions. All parties were ordered to exchange all documentary evidence in their possession concerning each defendant's connection with the Site. General plaintiff and defendant interrogatories were ordered to be developed by the parties to promote efficiency, and plaintiff's counsel, liaison counsel, and lead counsel were ordered to establish a schedule for all depositions. Timing for exchange of information was set out. Through the efforts of the settlement judge and cooperation of all parties, the process of *de minimis* settlements has reduced the number of defendants to approximately sixty.

### *De Minimis Settlements Predicated Upon Volume and Solvency*

Plaintiff has entered into agreements with numerous potential responsible parties ("PRPs"), settling their liability at the Site.

---

1. "Docket numbers" refer to numerical designations assigned sequentially to each pleading, motion, order, or other filing and are included for purposes of record keeping only. "Docket numbers" have no independent legal significance and are to be used in conjunction with the docket sheet prepared and maintained by the United States Court Clerk, Northern District of Oklahoma.

2. This issue has been extensively briefed. See Docket Nos. 261, 263, 265, 270 and 305.

These settlements have taken into consideration all data available concerning the amount of contaminants contributed by each settling party, in relationship to the total amount of contaminants deposited at the Site, as measured in gallons. Alternatively, some *de minimis* settlements have been conjointly predicated upon gallonage *and* inability to pay. When claims of poverty were made by parties with *de minimis* gallonage, a process was designed whereby the settlement coordinator would investigate the authenticity of the claim and report to Plaintiff whether settlement was recommended, based on inability to pay. Plaintiff then conducted its own investigation and either accepted or rejected that recommendation.

### Request for Contribution Bar and Pro Tanto Credit

Plaintiff asks that its future recovery against non-settling Defendants be based on the *pro tanto* rule, rather than the *proportionate* rule, as these are defined in a securities case, *Federal Deposit Insur. Corp. v. Geldermann, Inc.*, 763 F.Supp. 524, 528

**3.** The Court in *Geldermann* defined these terms as follows:

> Under the [pro tanto] rule, when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages. The algebraic formula for this rule is $(S - X) + (N + X) = T$ where T equals the total amount of damages determined at trial; S equals the relative culpability of settling parties; N equals the relative culpability of nonsettling parties; X equals the amount of money settlors were culpable for, but did not have to pay due to settlement. Therefore, if X is equal to or greater than $1, then nonsettlors must pay more than they are relatively culpable for under the pro tanto rule and are barred from recourse from settling parties. Nonsettling parties still retain a right of contribution as to one another.

> In class action securities litigation the proportionate rule has been applied based on the policy that defendants should pay according to their actual, relative culpabilities. This scheme permits a potential settlement. The nonsettling defendants are then barred from further rights of contribution from the defendants who have settled. The jury determines the total dollar damages, and the percentage of culpability of all defendants. The settling defendants pay their percentage of damages, and

(W.D.Okla.1990)[3]. Plaintiff also asks that the court bar any and all claims against the settling parties for liability associated with the Site, except to the extent that such claims are preserved by the settlements.[4]

Plaintiff argues that the *pro tanto* rule encourages settlement and that the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et. seq.*, expressly provides for such settlements. 42 U.S.C. § 9613(f). This section applies to settlements with the government, but Plaintiff argues that the policy is equally applicable to settlements among private parties. It points out that if contribution claims are allowed after a party has settled its liability, there is no incentive to settle at all.[5]

### Request for Proportionate Credit

In their Memorandum Regarding the Proper Settlement Bar Rule (Docket # 270) and Memorandum Regarding the Effect of *De Minimis* Settlements and Contribution Bar Upon Non–Settling Defendants' Liability (Docket # 300), the Defendants in Group I

> nonsettling defendants are jointly and severally liable for their percentage of damages, and will retain rights of contribution only as to each other. The algebraic equation is $T = S + (N1 + N2 + N3 \ldots)$ where T equals the total amount of damages at trial; S equals the settling defendants' relative culpability; and N equals nonsettling defendants' relative culpability.... (citations omitted).

**4.** Each order approving a *de minimis* settlement has included a clause that states: "Any breach, whether by omission or commission, whether intentional or non-intentional, of a Settling Party's representation and warranty that, it neither possesses, or has a right to possess, nor is aware of any information which indicates that it is responsible for additional or greater volume than is set forth in the Volume Report attached to the Agreement, which has not been included in the documentation provided to the Plaintiff ARCO in support of its offer to enter the Agreement, should render the Agreement null and void."

**5.** No party resists the imposition of a contribution bar with respect to settling defendants. The issue is whether the resulting credit to be afforded the remaining defendants on any plaintiff's judgment eventually rendered will be calculated on the total settlement dollars paid (pro tanto), or on the total percentage of responsibility attributable to all settling defendants (proportionate).

accurately argue that application of the *pro tanto* rule would immediately establish the relative responsibility of settling versus non-settling parties, with non-settling Defendants bearing the consequences of proceeding to trial.[6] Group I also argues that this rule is inconsistent with the notion of proportionate fault and is therefore inequitable, that it impedes total settlement because non-settling parties have a known "buffer" and may consequently gamble on a trial, and that it encourages collusion among defendants. The group asks the court to apply the proportionate rule, which it characterizes as more equitable and easier to apply, because it does not require fairness hearings.[7] It notes that the majority of courts in CERCLA cases have applied this rule.

### Settlement Judge's Analysis

The settlement judge in this case, Professor Martin A. Frey,[8] provided the court with his comments as to which settlement bar rule would more likely encourage settlement in a letter dated June 1, 1992, which is attached as Appendix "A". After a thorough and thoughtful analysis of the *pro tanto* and proportionate rules, he concluded that the *pro tanto* rule creates an additional incentive for defendants to settle, reduces some of the uncertainties that a plaintiff must face when structuring a settlement, and would enhance the settlement efforts of this case. He noted that the best way to promote settlement is to provide litigants with the incentive to settle and with clear, predictable rules regarding the effects of settlement.

### Legal Analysis

A number of courts have discussed the application of the *pro tanto* and proportion-ate rules to CERCLA cases. The *pro tanto* approach is contained in the Uniform Contribution Among Tortfeasors Act (UCATA), which provides contribution protection to all settling parties and reduces the amount of the non-settling parties' liability by the amount of the settlements.

The proportionate approach is used in the Uniform Comparative Fault Act (UCFA) to treat partial settlements. This approach results in the reduction of the plaintiff's claim by the percentage of the settling defendant's causal fault, but at the time of settlement the plaintiff does not know the exact amount or the proportion of that reduction, which must be determined at trial, where total damages and the percentage of the settling defendants' proportionate fault are found. The settling defendant is discharged from all liability for contribution, but may seek contribution from non-settling parties for amounts paid to extinguish the defendants' joint liability.

Prominent cases which have applied the proportionate approach to CERCLA cases include *United States v. Conservation Chemical Co.*, 628 F.Supp. 391 (W.D.Mo.1985); *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651 (D.C.Ill.1987), *aff'd*, 861 F.2d 155 (7th Cir.1988); *Lyncott Corp. v. Chemical Waste Management*, 690 F.Supp. 1409 (E.D.Pa.1988); *United States v. Western Processing Co., Inc.*, 756 F.Supp. 1424 (W.D.Wash.1990); *Allied Corp. v. Acme Solvent Reclaiming, Inc.*, 771 F.Supp. 219 (N.D.Ill.1990); *Comerica Bank–Detroit v. Allen Industries, Inc.*, 769 F.Supp. 1408 (E.D.Mich.1991).

Courts finding the *pro tanto* approach should be applied include *Allied Corp. v. Frola*, 730 F.Supp. 626 (D.N.J.1990); *In Re*

---

6. These consequences may be favorable or unfavorable, depending on the adequacy of the underlying settlements. All the *de minimis* settlements to date have been calculated on the estimated clean-up cost per gallon, *plus* a "bonus" for unanticipated future remediation costs. The pro tanto dollar-for-dollar credit could exceed the dollar amount of the collective proportionate responsibility of the settling defendants.

7. Application of the proportionate rule is only "easier" in the short run. In this case, a percentage of responsibility would have to be indi-vidually determined at trial for each of 340 (or more) absentee settling defendants by the finder of fact.

8. Professor Frey is a tenured Professor of Law at the University of Tulsa College of Law. He has served as an Adjunct Settlement Judge in connection with the Northern District of Oklahoma's court annexed Adjunct Settlement Judge Program for over five years, and serves as Reporter for this court's Civil Justice Reform Act Advisory Committee.

*Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019 (D.Mass.1989); *United States v. Rohm & Haas Co.,* 721 F.Supp. 666 (D.N.J.1989); *United States v. Cannons Engr. Corp.,* 720 F.Supp. 1027 (D.C.Mass. 1989), *aff'd,* 899 F.2d 79 (1st Cir.1990); *The City of New York v. Exxon,* 697 F.Supp. 677 (S.D.N.Y.1988).

In *Conservation Chemical,* the court emphasized that, while CERCLA is silent on apportionment methodology,[9] any method should take into account parties whose relative fault depends upon factual circumstances and therefore who must be found responsible on some basis of comparative fault. Contribution, the court stated, is an equitable remedy and the legislative history of CERCLA imposes a duty on courts to apportion responsibility equitably, so no windfall results from an arbitrary apportionment with no basis in comparative fault. The court concluded that the effect of settlement on non-settling parties should be governed by the Uniform Comparative Fault Act, since its principles are most consistent with, and implement, Congress' intent in drafting CERCLA.

The court in *Edward Hines Lumber Co.* recognized that contribution bars encourage settlement of complex litigation, but found an extensive fairness hearing undesirable in a case where the government was not involved, the consent decree identified the remedial action to be taken, and the court's only duty was to apportion clean up costs. The proportionate approach was applied to avoid such a hearing.

In *Lyncott Corp.,* the court also adopted the reasoning of the Uniform Comparative Fault Act in concluding that there should be uniform application of principles of contribution in CERCLA actions. It found that the Uniform Contribution Among Tortfeasors Act favored pro rata apportionment over comparative fault and required a fairness hearing in every case to determine good faith.

The court in *Western Processing* noted that § 9613(f)(2)[10] of CERCLA discusses "settlement" and provides that a settlement with the United States or a state reduces the potential liability of others by the amount of the settlement, but concluded it does not mandate a similar result concerning contribu-

**9.** CERCLA is no longer silent, *see* 42 U.S.C. § 9613(f)(2), set out in full at footnote 10, *infra.* This provision was contained in the Superfund Amendments and Reauthorization Act of 1986, Pub.L. 99–499, § 113(f)(2), and seriously calls into question *Conservation Chemical's* prior interpretation of Congressional intent. *See also,* 42 U.S.C. § 9622(g), where the *pro tanto* rule is mandated with regard to *de minimis* settlements with the United States.

**10.** Title 42 U.S.C. § 9613(f) states:

(1) Contribution. Any person may seek contribution from any other person who is liable or potentially liable under section 107(a) [42 USCS § 9607(a)], during or following any civil action under section 106 [42 USCS § 9606] or under section 107(a) [42 USCS § 9607(a)]. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 106 or section 107 [42 USCS § 9606 or 9607].
(2) Settlement. A person who has resolved its liability to the United States or a State in an administrative or judicially approved settle-

ment shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, *but it reduces the potential liability of the others by the amount of the settlement.*
(3) Persons not party to settlement. (A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability. (B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2). (C) In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed by Federal law. (emphasis added).

tion, which is dealt with in § 9613(f)(1). This subsection of Title 42 states that any person may seek contribution from any other person who is liable or potentially liable under CERCLA and that a court "may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." [11]

The court in *Acme Solvent Reclaiming, Inc.* adopted the premise of *Lyncott* that a uniform federal rule regarding contribution should be adopted so that consistent principles of contribution and allocation of damages develop in CERCLA actions. It noted that another advantage of the comparative fault [proportionate] rule is that it does not require a fairness hearing. "In a complex case such as this one, a fairness hearing would be long and arduous. Holding a hearing in this case would negate the benefits, such as finality and reduced cost, which a settlement otherwise offers to the settling parties." 771 F.Supp. at 223.

In *The City of New York*, the court engaged in a detailed exploration of whether the City of New York was a "state" under § 113(f)(2) when it settled with the defendant, having concluded that the statute did not apply to settlement between private parties. The court concluded: "the state has expressed its approval of the City's role in this litigation, and the Judgment reflects a comprehensive settlement worked out between the State, the City, and the settlers. To deny the settling parties the statutory benefits of section 113(f)(2) under these circumstances would be unduly formalistic." 697 F.Supp. at 686.

In *Comerica Bank–Detroit* the court concluded that § 113(f)(2) does not apply to private settlements, but only to defendants who settle with a governmental body. It distinguished the *City of New York* case, noting that the court there concluded that the action of the City of New York was

approved by the state, justifying the extension of the § 113(f)(2) *pro tanto* rule to the city, but that Comerica was a completely private entity with no relation to the state which had never offered to make itself liable for the entire cleanup.

The court in *Acushnet River* relied on § 9613(f)(2) to find that the pro tanto approach was to apply where the government settled with one, but not all defendants. "[T]he words of the statute are clear: the potential liability of the others is reduced 'by the amount of settlement,' not by the settling party's proportionate share of any damages ultimately determined to have been caused." 712 F.Supp. at 1027. The court admitted that "[t]he few decided cases do not clearly point this way," and noted the *Lyncott Corp.* and *Edward Hines Lumber Co.* decisions "fail[ed] even to discuss the language of subsection 113(f)(2)." *Id.*, Footnote 10, at 1026.

*Rohm & Haas* involved a direct application of the *pro tanto* rule contained in Section 113(f)(2) in a case where some of the PRPs had settled with the government. Because that case involved partial settlements with the sovereign, it is factually distinguishable from the case at hand, where the settlements are occurring with a fellow PRP that undertook a privately paid remediation. However, to the extent that ARCO has responsibly performed the cleanup that was in the first instance the burden of the United States, equity dictates that it should be afforded the same consideration. Consequently, the policy considerations discussed in *Rohm & Haas* remain compelling under these circumstances. The court found that the proportionate approach is inconsistent with Congress' intent to expedite effective remedial action and minimize litigation. *Id.*

While any type of settlement bar provides settling defendants with the peace required to induce settlement, the *Rohm & Haas* court concluded that the proportionate ap-

---

11. Although Congress failed to expressly mandate the use of the *pro tanto* approach in a private contribution case, it did not preclude it either. This language constitutes a grant of discretion whereby the court is free to follow the *pro tanto* approach which Congress requires in government remediation actions, or to apply other "equitable factors" deemed appropriate in al-

locating remediation costs. To interpret this grant of discretion as *allowing* the use of the proportionate approach is, to my mind, permissible. However, interpreting this language as *requiring* application of the proportionate rule as the only available "equitable" method of apportionment is more than a little stretch.

proach had a tremendous negative impact on the benefit the United States or a state could hope to receive from settlement; the responsibility of a settling party for damages would need to be fully litigated to determine the settling party's proportional share prior to agreement, thus duplicating the aspects and expense of the litigation the settlement was designed to avoid. *Id.* The only parties which would avoid or decrease litigation expenses would be those settling, and the overall litigation would remain as complex and unwieldy as it was prior to settlement. *Id.*

The court in *Rohm & Haas* concluded that, under the proportionate approach, there would be no incentive for governmental plaintiffs to enter into such settlements, since by doing so they would not decrease their enforcement costs, .but rather take on the burden of showing that the settling defendants paid their equitable share. If unsuccessful, the government would be faced with covering the shortfall between the amount of the settlement and the settling parties' equitable share of the response costs. There would be little incentive to settle with *de minimis* parties. The court concluded: "[W]e do not believe that this scenario, which follows from use of a proportional or equitable approach, is consistent with Congress's intention to facilitate the voluntary settlement of CERCLA litigation." *Id.* at 679.

The *Rohm & Haas* court noted that CERCLA does not refer to "good faith settlements", but rather to "an administrative or judicially approved settlement." *Id.* at 678. "The amendment recognizes that judicial examination and approval of the settlement itself is adequate to protect against improper or 'bad faith' settlements". *Id.* The court determined that it was to measure the reasonableness of a settlement against the CERCLA section's purpose to "expedite effective remedial action and minimize litigation", while keeping an eye on the overall "statutory constellation that is CERCLA". *Id.* at 680. Factors to consider in determining whether a settlement is reasonable include: the strength of a plaintiff's case, the good faith efforts of negotiators, the possible risks of and transaction costs involved in litigation under CERCLA, and the effect of settlement on non-settlers. *Id.*

The court in *Rohm & Haas* found that other factors to consider in deciding if a settlement is reasonable are the complexity, expense and likely duration of the litigation, the risks of establishing liability, the ability of the defendant to withstand a greater judgment, and the range of reasonableness of the settlement fund in light of the risks of litigation. *Id.* A court's task is not to make a finding of fact as to whether the settlement figure is exactly proportionate to the share of liability attributed to settling defendants. *Id.* "Rather, it is to determine whether the settlement represents a reasonable compromise, all the while bearing in mind the law's generally favorable disposition toward the voluntary settlement of litigation and CERCLA's specific preference for such resolution." *Id.* at 680–681.

In another government case, *Cannons Engr. Corp.*, the court likewise found that the plain terms of § 9613(f)(2) indicate "that Congress made a conscious choice in 1986 not to adopt UCFA principles for CERCLA purposes. Rather, Congress adopted the approach taken in section 4 of [the UCATA]." 720 F.Supp. at 1048. The *Cannons* court noted that section 4 of the UCATA, which provides contribution protection to all settlers, "has the purpose and effect of encouraging settlements by providing protection to early settling parties and subjecting non-settling parties to paying the plaintiff's unrecovered costs. Congress, in enacting section 113(f)(2) of CERCLA, had the same goal of encouraging settlements." *Id.* The court pointed out that application of the UCFA to CERCLA cases was inappropriate, because CERCLA liability is not based on negligence or comparative fault, but is based on strict liability to the government. *Id.* at 1049. The court distinguished the decisions in *Edward Hines Lumber Co.* and *Lyncott Corp.* applying UCFA principles to CERCLA settlements, saying the government was not involved in those cases.[12]

---

12. Because the government is also not involved here, I do not rest my departure from those cases on that factual distinction. I am not even prepared to argue that the result obtained in those

The decision in *Frola* is significant because it involved a non-government plaintiff. Allied had undertaken cleanup of a hazardous waste site and then brought suit against certain responsible parties who had not contributed to a trust fund to reimburse Allied under a settlement with the government. The defendants filed a third-party complaint against Allied and various settling parties. The third-party complaint included a claim for contribution under the State Joint Tortfeasor Contribution Act. The court noted that § 9613(f)(2) provided that settling parties in CERCLA settlements are not liable for claims for contribution by non-settling parties.

The *Frola* court determined that, despite the refusal to dismiss contribution claims against settling parties in *Lyncott*, "a subsequent and more synergic view of contribution claims in a CERCLA case" was found in *Acushnet* and *Rohm & Haas*, where it was determined that the specific language in § 9613(f)(2) is completely incompatible with any theory of comparative negligence. 730 F.Supp. at 638. The court in *Frola* concluded that the application of a theory of comparative fault after the adoption of § 9613(f)(2) "is chimerical." *Id.* at n. 6. "This interpretation is consistent with the congressional purpose of encouraging settlement of CERCLA cases." *Id.* at 638.

Although cited by the parties, the Tenth Circuit's recent discussion of the *pro tanto* rule in the context of a securities case is not particularly helpful. *See, Federal Deposit Insur. Corp. v. Geldermann, Inc.,* 975 F.2d 695 (10th Cir.1992). There, the court noted that "[c]ontribution bar orders are frequently upheld when they are sought by a settling defendant against a nonsettling defendant in the same case. These courts have concluded that they have the authority to enter such orders as an integral part of a settlement when the settling parties and all parties to the bar order are before the court." *Id.* at 698 (citations omitted). The court emphasized that fundamental due process principles prohibit such a bar order which precludes

the rights of *nonparties.* *Id.* While the district court had confirmed the good faith nature of the settlement agreement at issue, the court found that "[s]uch confirmation procedures often tend to be abbreviated, imprecise, and lacking in the constitutional safeguards provided by a full and adversarial trial." *Id.* at 699.

The *Geldermann* court also concluded that the district court's order applying the pro tanto rule was "speculative and premature", because no judgment had yet been awarded against the defendants and so the basis for, and amount of, the judgment was unknown. Also, whether the settling defendants were joint tort feasors with the remaining defendants was unknown, and the record did not support the court's decision regarding the amount of the maximum potential setoff. Because that part of the order barring contribution or indemnity against the settling parties was an "important and integral part of the order", and because of the speculative and premature nature of the setoff part, the Tenth Circuit vacated the entire order, expressing no opinion as to whether the pro tanto rule was the appropriate legal standard to calculate the setoff for related settlements under the circumstances presented. *Id.* at 700.

The fundamental purpose of CERCLA is to provide for the expeditious clean up of hazardous waste sites; "[c]ertainly Congress intended and anticipated that potentially responsible persons would accept and assume the responsibility to effect cleanup," as opposed to the government bearing the cost. 628 F.Supp. at 404. Congress provided statutory recognition of the fact that the *pro tanto* approach best serves public policy when the government is involved by enacting § 9613(f)(2) of CERCLA. (See footnote # 10).

Those cases that have selected the proportionate approach in CERCLA actions can be distinguished from the case at bar. *Conservation Chemical* was decided in 1985, before the 1986 SARA Amendments to CERCLA adopted the *pro tanto* approach. The court

cases was incorrect. However, I am convinced that under the specific circumstances of this case, the judicial discretion afforded by Section

9613(f)(1) is most appropriately exercised in favor of the *pro tanto* rule.

made a bad guess that Congress would be more attracted to the superficial "fairness" of proportionality than to the pragmatic procedural efficiencies afforded by *pro tanto* treatment. Consequently, it emphasized the importance of its obligation to apportion responsibility in a fair and equitable manner and prevent a "windfall to" or "wipeout of" any party, not the court's obligation to reduce litigation expense and delay through settlement. 628 F.Supp. at 401–402. The court's early misperception that the proportionate approach is always "fairer" and thus preferred was shared by the *Western Processing Co.* court, which listed as a disadvantage of the *pro tanto* approach that it fails to equitably distribute losses based on the proportionate fault of the defendants.[13]

*Edward Hines Lumber Co.* was decided in 1987, and, unlike the case at bar, a very limited number of parties were involved. The court recognized the contribution bar, but used the proportionate approach to avoid the perceived possibility of "extensive" fairness hearings.

Then the proportionate band wagon started rolling. In 1988, the Court in *Lyncott Corp.* relied on the *Conservation Chemical* and *Edward Hines Lumber Co.* cases when it favored the proportionate approach, attempting to establish a "uniform federal rule." 690 F.Supp. at 1417. The *Lyncott* court rejected the *pro tanto* approach because it was "inconsistent with the law previously established" in that case and because it required a fairness hearing. *Id.* at 1412. In 1990, the

court in *Acme Solvent Reclaiming, Inc.* relied on these three cases in favoring the proportionate approach, noting that a uniform federal rule was desirable and that any fairness hearing would necessarily be "long and arduous." 771 F.Supp. at 222–223. These courts appear to have chosen the proportionate rule at least partly because that was the road most traveled. Finally, in 1991, the *Comerica Bank–Detroit* case relied on "the plain language" of 42 U.S.C. § 9613(f)(2) applying to governmental entities to find it inapplicable to a completely private entity, Comerica's, request for contribution protection. The court ignored the discretionary language of 42 U.S.C. § 9613(f)(1), focused exclusively on § 9613(f)(2), and stated: "This Court adds its voice to the growing chorus of federal courts which have applied the Uniform Comparative Fault Act to CERCLA settlements...." 769 F.Supp. at 1414. It apparently did so because the contribution claimant, Comerica, did not offer to make itself liable for the entire cleanup, as ARCO has done here, and consequently had no § 107 claim.[14]

For the reasons that follow, I disagree with the proposition that the proportionate rule should be uniformly applied.

### *Practical and Policy Considerations*

Judges in CERCLA cases who have applied the proportionate rule apparently did not appreciate the monkey wrench it throws into the mechanics of settlement. It is un-

---

13. This is not really true in a CERCLA case like the one at bar where the underlying amounts of settlements are based on solid data concerning gallonage amounts, and gallonage is likely to be the measure of responsibility at trial. However, whether or not this sort of rough proportionality occurs is really beside the point, which is that proportionality does *not* necessarily equate to fairness, and that non-proportionality does not necessarily make a settlement unfair. Proportionality is just one of a universe of factors that may be considered by the court in determining whether a proposed partial settlement should be approved.

14. There, the State sued GM, and GM brought third party contribution actions against only nine defendants, including Comerica. The third party defendants counterclaimed against GM, and filed cross-claims against each other. GM then set-

tled with the State, agreeing to pay in excess of ½ of the response costs incurred in return for a complete discharge. GM also settled its contribution claim against Comerica. The court was asked to approve the consent·decrees for both settlements, and did so, holding that § 113(f)(2) applied to the GM/State settlement and barred all claims against GM, but did *not* apply to the GM/Comerica settlement. However, reading between the lines, it appears that the cleanup had been completed by the State, and that neither GM nor Comerica ever had a § 107 claim, as ARCO does here. If this is the case, then the holding in *Comerica Bank–Detroit* is entirely consistent with the approach I have taken here, which employs the proportionate rule with regard to § 113 claims, and adopts the *pro tanto* rule only in connection to ARCO's § 107 action for directly expended response costs.

usual for complex, multi-party cases to settle all at once. Settlement in such cases is a progressive process, usually involving a series of partial settlements. The proportionate rule makes partial settlements enormously difficult. No matter how many parties settle, it still contemplates a full-blown trial, where the proportionate responsibility of every remaining and former party to the litigation is determined. The trial task becomes more difficult, and contested fact issues are multiplied, instead of reduced. For those who have settled, the determination of responsibility is *in absentia*, putting plaintiff in the awkward position of maximizing its damages vis-a-vis the remaining parties and minimizing its damages vis-a-vis the settling parties. In fact, the plaintiff must step into the shoes of settling defendants, often without any detailed knowledge of their defenses or the internal data necessary to present an effective defense.[15]

The *pro tanto* approach is consistent with the congressional purpose of minimizing litigation and encouraging settlement of CERCLA cases. It gives settling defendants the security of knowing any settlement they reach will end their liability in the case. Since non-settling parties remain jointly and severally liable, they pay the balance owed to plaintiff regardless of whether any settling defendant has paid more or less than its proportionate share. The practical effect in a case where the total cost of the remediation has not been finally fixed is to increase the risk the longer a defendant stays in the suit, creating a strong incentive for earlier and/or universal settlement.

The *pro tanto* rule does require special hearings to determine the fairness of settlements and decide if they are collusive or unfair as to amounts. However, fairness hearings need not be long and arduous, as the law requires only that a fair and reasonable compromise be demonstrated. There have been such hearings as to every defendant settling in this case and those hearings

have been simple and straight forward. There has been virtually no opposition to the settlements presented. Because the underlying data has been disclosed, no party has contested gallonage determinations or seriously questioned the equity of the settlements. All settlement negotiations have been conducted under the auspices of the Adjunct Settlement Judge appointed by the court. The reason that no objections have been raised at the fairness hearings is that the remaining defendants know the settlements are fair and at least roughly based on proportionate liability or other legitimate considerations, such as inability to pay. Given the arm's length negotiation of these settlements through the auspices of a court-annexed settlement process, application of the *pro tanto* rule seems particularly appropriate, as opposed to unfair. The Defendants who seek to apply the proportionate rule are obviously motivated by the desire to minimize their liability at the expense of the remediating plaintiff, and, perhaps, (having a keen appreciation of the time-value of money) to delay and unduly complicate the trial proceedings.

Having personally conducted in excess of eight hundred settlement conferences, I am aware that the complexity and difficulty of settlement efforts increase geometrically by the number of parties involved in a case. Uncertainty as to which contribution bar credit rule will be applied, together with the prospect that the court's discretion will be exercised in favor of the proportionate rule, too often frustrates settlement. The ease of calculation and the certainty of result renders the *pro tanto* approach vastly superior to the proportionate rule in bringing about agreed resolutions. When proper case management procedures are in place, it is easy to append fairness determinations to regular status hearings.

The application of the proportionate method in the case at bar would be inconsistent with the court's prior ruling establishing the

---

15. Given the likelihood of "courthouse steps" settlements, the plaintiff's trial task becomes a moving target. For example, two days before trial, the plaintiff is prepared to prove defendant "X" had a large share of responsibility. Defendant "X" then settles the day before trial. Now plaintiff must try to minimize "X's" responsibility, in order to avoid having the value of the settlement diminished. This task, of course, is best performed in collusion with "X", as part of the overall settlement "deal."

principle of joint and several liability of the defendants to plaintiff.[16] Proportionate credit gives non-settling defendants the practical advantage of "several," as opposed to joint and several, liability, with respect to the settling defendants.

It is important to note that the court's application of the *proportionate* or *pro tanto* approach is discretionary and is to be determined on a case by case basis.[17] 756 F.Supp. at 1431. Thus far in this case, the fairness hearings have been simple and largely unopposed. To properly evaluate the case, and compromise successfully from here, plaintiff needs to be able to rely upon the prospect of full recovery, less the share for which it will be held responsible. To be reasonably efficient, any trial should revolve around the respective responsibility of the *non-settling* parties. The *pro tanto* contribution bar rule encourages settlement, provides for certainty in computing contribution credits, and streamlines the trial task. Both the plaintiff and non-settling defendants know how great a buffer has been created by settlement, which makes for better case evaluation and a practical reticence to try marginal ones.

Often, the greatest exposure to parties involved in environmental cases are litigation costs.[18] Adoption of the proportional rule

**16.** *See,* Report and Recommendation of United States Magistrate Judge (Docket # 137), filed September 20, 1991, and Order Clarifying and Confirming Report and Recommendation of United States Magistrate Judge (Docket # 182), filed January 28, 1992. Pursuant to that Order, any judgment in favor of plaintiff on its § 107 claim would be joint and several, and any judgment on its § 113 claim would be several only.

This raises the dilemma of how to apportion past settlement amounts between the plaintiff's § 107, § 113, and future claims. This dilemma should be resolved as follows:

No portion of any settlement should be attributed to ARCO's § 113 claim. The per gallon settlement charge should be attributable to the § 107 claim, as should the "bonus" for future liability. The remaining defendants should get full *pro tanto* credit for these amounts.

Any defendants remaining at trial should be entirely responsible for the defendant's share of the § 113 claim which should be proportioned among them. Each remaining defendant should be responsible only for its proportional share, *i.e.* should be severally liable only for its own proportioned § 113 liability. As the settling defendants have been completely discharged, no responsibility under §,113 should be attributed to them. As a Co–PRP, ARCO's proportionate share of the costs expended by the government should be computed, and the remaining defendants should be held severally liable only for those amounts paid by ARCO in excess of its proportionate share.

This scheme provides incentives for both defendants and the plaintiff to settle, in that the remaining defendant(s) will be left holding the bag as to § 113 liability not attributable to ARCO, and the plaintiff will bear the risk of their solvency. The flaw in this scheme is that its prohibition against attributing settlement proceeds to the § 113 claim makes universal settlement difficult, because ARCO must ultimately go to trial against somebody to recover its § 113 outlay. Consequently, in order to alleviate that problem, the court should allow some portion of the last settlement proceeds to be attributed to plaintiff's § 113 claim if the following two conditions are first met: (1) The parties agree to the amount to be so attributed, and (2) that the amount is attributed in the context of a *universal* settlement.

One other issue remains, which is whether or not the "bonus" attributable to future remediation costs should be reserved and drawn down as those costs accrue. They should not. ARCO should be free to use such monies as it sees fit from point of payment. Consequently, they should also be fully included in the *pro tanto* dollar for dollar credit afforded the remaining defendants.

This fosters settlement, simplifies the trial, and provides for ease of continued case administration.

**17.** I advocate more certainty and definitive appellate guidance with regard to the imposition of contribution bars. However, such guidance need not set up anything as rigid as the proportionate "uniform rule" discussed in *Lyncott Corp.* and *Allied Corp. v. Acme Solvent Reclaiming, Inc.* Instead, it would be useful if the *pro tanto* rule was clearly favored by the Tenth Circuit, so as to encourage early judicial intervention and settlement. A window of discretion should be maintained to permit the application of a proportionate bar in those few cases where very few parties are involved, and factually-intensive "fairness" issues would require hearings tantamount to trial. Nevertheless, the concept of "equitable apportionment" should be squared with the pragmatic notion that in today's complex civil cases, the quickest, simplest, and most inexpensive resolution is usually the most just.

**18.** This is certainly true for the so-called "de minimus" defendants, where the transaction costs involved in defending the case can easily outweigh any proportional responsibility. If the proportional rule is employed, the plaintiff has a disincentive to enter into *de minimis* compromise settlements because such settlements will tend to

makes trial more likely and increases the cost of trial.

There is a clear public policy in favor of expense and delay reduction resulting from early and effective case management and settlement, as expressed by Congress in its enactment of the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.* Settlement should *reduce* expense and delay. The proportionate rule causes partial settlement to have the opposite effect. The federal courts have an obligation to manage cases in such a way as to implement the intent of Congress. CERCLA encompasses a strong public policy favoring voluntary environmental clean-up. When the *pro tanto* contribution bar approach is combined with CERCLA's contribution scheme, it offers a comparatively cheap, effective way for a potentially responsible party that cleans up a site to recover its costs without an overly expensive, full-blown trial. Such an approach reduces the concern that few voluntary cleanups will occur, because the process of recovery of contribution is too burdensome or uncertain.

## Conclusion

It is time to re-think the application of the proportionate and *pro tanto* rules to CERCLA cases to measure in context the fairness and equity inherent in each. The mandate of Congress to reduce expense and delay in such cases demands analysis of each rule and its practical impact. Viewed in this manner, the *pro tanto* approach is clearly superior. At least under the circumstances of this case, the proportionate rule is a vehicle which can be used to tactically delay and increase costs under the guise of seeking "equity." That should not be permitted.

Plaintiff's recovery against defendants in this case should be based on the *pro tanto* rule.

Dated this 3rd day of March, 1993.

reduce the amount of its final recovery. To the extent that a contribution plaintiff such as ARCO performs the same removal or remediation function as the government, the same policy considerations favoring full recovery for government removal and remediation costs should apply. Ultimately, adoption of the proportionate rule in

## APPENDIX A

Martin A. Frey

ATTORNEY-AT-LAW

3120 East Fourth Place

Tulsa, Oklahoma 74104

918-631-2455

June 1, 1992

The Honorable John Leo Wagner, Magistrate Judge

United States District Court for the

Northern District of Oklahoma

333 West 4th Street

Tulsa, OK 74103

   Re:  ARCO v. American Airlines

      89-C-868 B;  89-C-869 B;  90-C-859-B

      Whether the *Pro Tanto* or *Proportionate* Credit Rule

      Would More Likely Encourage Settlement in This

      Superfund Case

Dear Judge Wagner:

In compliance with your request for the settlement judge's comments as to which credit standard would more likely encourage settlement, I am happy to provide you with the following observations. In formulating my thoughts I have read the materials submitted to the Court by ARCO and the Sand Springs PRP group, including their May 29th submissions, as well as Harris, *Washington's Unique Approach to Partial Tort Settlements: The Modified Pro Tanto Credit and the Reasonableness Hearing Requirement,* 20 Gonzaga Law Review 69 (1984/85), an article cited in Group I's Application for Leave To File Memorandum Regarding the Proper Settlement Bar Rule, page 6 (dated May 12, 1992).

CERCLA contribution cases provides a strong disincentive for PRPs to come forward and conduct cleanups, because it insures they will be left shouldering a disproportionate share of the costs. Alternatively, it provides a great incentive for the most culpable and solvent PRPs to hold out for trial.

## Background

The original consolidated cases in ARCO v. American Airlines included over 150 defendants. Through the process of de minimis settlements and the Case Management Order § V dismissals, the number of defendants has been reduced to about 38. Also through the de minimis settlement process, a number of PRP's who were not defendants have also settled. Under the Case Management Order, the 38 defendants are divided among the following groups:

Group 1: Sand Springs PRP Group

Group 2: Sand Springs Home

Group 3: Glenn Wynn, Vacuum & Pressure Tank Truck, Vacuum Refining Co. (Operators); Interstate Electric (a Generator)

Group 4: Miscellaneous Generators including Franchisors and Burlington RR

Group 5: United States Government (Miscellaneous Generators and Corps of Engineers)

ARCO is in the process of amending its complaint to clarify the franchise issue which may further reduced the number of defendants.

On March 2, 1992, ARCO amended its complaint by adding about 150 new defendants. While most were generators, some were involved with Recyclon, another operator at the Glenn Wynn site. A number of the new defendants have made de minimis offers to ARCO and a number have made Case Management Order § V requests for dismissal. Due to the volume of these offers and requests, it will take about another week before it becomes clear exactly how many of the new defendants will remain in the case. The Settlement Coordinator is working with the new defendants to assign them to an existing group. If new defendants do not select the Sand Springs PRP Group, they will be assigned to Group 4 (John Tucker, lead counsel).

Also, the two third-party plaintiff actions have proceeded well and the number of third-party defendants who will either not settle or not be dismissed will be small. That effort continues.

The universe of defendants has been defined. The exact number of defendants currently in this case, although uncertain as of this date, will be known within a week. Once these numbers become clear, the gallons that have been settled out and the gallons attributed to the remaining defendants can be readily ascertained. This, along with ARCO's assessment of the costs for the project, will provide greater certainty as the settlement process continues.

ARCO currently estimates the response costs for the Glenn Wynn site to be $16.6 million. Included in this figure are administrative costs and legal fees, a $1,880,000 contingency fund as to remedial action, and costs for the second operable unit. Naturally, the defendants take issue whether some of these items should be included in ARCO's estimate of the response costs for the Glenn Wynn site. Therefore ARCO's $16,600,000 estimate will be the subject to debate throughout the settlement process and in issue if the case proceeds to trial. Also ARCO's share of the response costs are also in issue.

The parties remaining in this law suit comprise more than generators. They can be categorized as:

ARCO (the plaintiff)

Sand Springs Home (the owner)

Glenn Wynn and his entities (the operator)

various generators (Sand Springs PRP Group, Interstate,

Miscellaneous Generators, and United States Government).

Each may well have a share of response costs. For settlement, each must be assumed to have exposure as to the ultimate division of the response costs. As each defendant settles, the question remains whether ARCO or the remaining non-settling parties will absorb good faith errors that have occurred in regard to those settlements.

The best method for promoting settlement is to provide litigants with the incentive to settle and with clear, predictable rules regarding the effects of settlement. Three credit rules are: the *pro rata* rule (1939 Contribution Among Tortfeasors Act); the *pro tanto* rule (1955 Uniform Contribution Among Tortfeasors Act and the Restatement

(2d) Torts §§ 885, 886A, 886B (1965)); and the *proportionate* credit rule (Uniform Comparative Fault Act (1977)). ARCO has proposed using the *pro tanto* rule; the Sand Springs PRP Group has proposed using the *proportionate* credit rule. Neither ARCO nor the Sand Springs PRP Group has proposed using the *pro rata* rule.

### Pro Tanto Rule

The *pro tanto* rule reduces the ultimate judgment by the amount paid by a settling defendant. If a settling defendant paid $50,-000 to settle the claim against it, any recovery after judgment against the non-settling defendants is reduced by that amount.

> Example: Assume a suit with five defendants. When the plaintiff settles with one defendant, the plaintiff's recovery after judgment is reduced by the amount of that settlement.
>
> Therefore, if the plaintiff settles with one of the five defendants for $50,000, and the plaintiff later recovers a judgment for $300,000, the plaintiff may proceed against the remaining four defendants for $250,000, or if divided equally, $62,500 each (each of the remaining four defendants is responsible for one-fourth of the judgment after the amount collected from the settling party is deducted). Although the plaintiff has settled for less than what the settling party's share would have been had there been no settlement ($60,000), the non-settling defendants make up the difference between what the settling party paid and the judgment. The plaintiff receives the amount of the judgment ($50,000 + $62,-500 + $62,500 + $62,500 + $62,500 = $300,000).
>
> If the plaintiff settles with one of the five defendants for $80,000, and the plaintiff ultimately recovers a judgment for $300,000, the plaintiff may proceed against the remaining four defendants for only $55,000 each (each of the remaining four defendants is responsible for one-fourth of the judgment after the amount collected from the settling party is deducted). By settling for more than the one defendant's share, the plaintiff still only collects the amount of the judgment ($80,000 + $55,000 + $55,000 + $55,000 + $55,000 = $300,000).
>
> Example: Assume a superfund suit with an owner, an operator, and 300 generators as defendants. When the plaintiff settles with one defendant, the plaintiff's recovery after judgment is reduced by the amount of that settlement.
>
> Therefore, if the plaintiff settles with one generator for $50,000, and the plaintiff later recovers a judgment for $15,-000,000, the plaintiff may proceed against the remaining owner, operator, and 299 generators for $14,950,000. Allocation will be made among the non-settling defendants as to who will pay what amount of the $14,950,000. If the plaintiff has settled for less than what the settling party's allocation would have been had there been no settlement (assume $60,000 would have been the settling defendant's allocation), the non-settling defendants make up the difference between what the settling party paid and the judgment. The plaintiff receives the amount of the judgment ($50,-000 + $14,950,000 = $15,000,000).
>
> If the plaintiff settles with one generator for $80,000, and the plaintiff ultimately recovers a judgment for $15,000,-000, the plaintiff may proceed against the remaining owner, operator, and 299 generators for $14,920,000. Allocation will be made among the non-settling defendants as to who will pay what amount of the $14,920,000. By settling for more than the settling generator's share (assume $60,000 would have been the settling defendant's allocation), the plaintiff still only collects the amount of the judgment ($80,000 + $14,920,000 = $15,000,-000).

Under the *pro tanto* rule:

* A settling defendant is discharged from all contribution claims as long as the settling party acted in "good faith." In the absence of good faith, there is no discharge.
* Once a settlement has been approved, the non-settling defendants receive a *pro tanto* credit. The *pro tanto* credit is deducted from the judgment against the non-settling

defendants. The division of the judgment among the non-settling defendants is calculated by an allocation among the non-settling defendants. The *percentage* of the judgment allocated each non-settling defendant will increase as the number of settling defendants increases. The dollar amount allocated to a non-settling defendant may be less than, equal to, or more than the dollar amount allocated to that defendant had no defendants settled.

\* The computation of the *pro tanto* credit to the non-settling defendants is a relatively simple and mechanical task. In this case, however, each settling party has paid $1.65/gallon for the clean-up and a $.50/gallon premium. It is unclear how this premium (which currently totals over $1,000,000) will be credited to the non-settling defendants. Also, since ARCO brought more than one claim against the defendants, it is unclear how the credit will be allocated between claims.

\* The *pro tanto* rule eliminates the need for a subsequent fairness hearing concerning the defendants who have previously settled.

The *pro tanto* rule encourages defendants to settle by offering them a discharge from all liability for contribution for a sum certain. If at a later time it is concluded that the settling parties should have paid more, they are still discharged from all liability for contribution. They not only do not have to pay the difference but they also have saved the transaction costs involved with litigation.

As the number of defendants settle and the number of non-settling defendants dwindle, the non-settling defendants face an increasing risk of having to shoulder more than a proportionate share of the response costs, assuming that in the aggregate, the amount of the settlements will not equal the settling parties share had they not settled. When this risk is compared with the certainty which results from settlement and a discharge from all liability for contribution, defendants may be encouraged to seriously consider settlement.

The *pro tanto* rule promotes the concept of joint and several liability. The rule, however, is inconsistent with the policy of equitably distributing losses among defendants based upon proportionate fault. Under the *pro tanto* rule, a settlement extinguishes the non-settling defendant's right to proportionate contribution from the settling defendants. Instead the non-settling defendants receive *pro tanto* credit over which they have no control.

In some cases, a non-settling party will be encouraged to settle so that it will not wind-up holding the bag. The *pro tanto* rule may also discourage settlement. If a non-settling party believes that the settling parties are settling at more than their share, the non-settling party may be encouraged not to settle. This party may escape financial responsibility or have its financial responsibility reduced by the overpayments of settling defendants.

The *pro tanto* rule encourages the plaintiff to settle. It allows the plaintiff to know the exact amount of the credit the non-settling defendants will receive and assures the plaintiff that it will recover the full amount of its judgment. Even if the plaintiff settles with some defendants at amounts which later prove to be in excess of their shares, the plaintiff will receive no more than the full amount of its judgment.

*Proportionate* Credit Rule

The *proportionate* credit rule reduces the plaintiff's award by the percentage of responsibility attributable to the settling defendant. The *proportionate* credit rule requires the trier of fact to allocate a percentage of responsibility to the settling party as well as to each non-settling parties. Any recovery after judgment against the non-settling defendants is reduced by the percentage of responsibility attributable to the settling defendant.

Example: Assume a suit with five defendants with equal responsibility. Each is 20% responsible. When the plaintiff settles with one defendant, the plaintiff's recovery after judgment is reduced by the percentage of responsibility attributable to the settling defendant, that is 20%.

Therefore, if the plaintiff settles with one of the five defendants for $50,000, which at trial turns out to be 18.67% of the plaintiff's judgment for $300,000, the plaintiff may proceed against the remaining four defendants for 80% of the judgment (100% less 20%) (i.e., $240,000, or $60,000 each (each of the remaining four defendants is responsible for one-fifth of the judgment)). Although the plaintiff has settled for less than what the settling party's percentage would have been had there been no settlement (20% or $60,000), the non-settling defendants only pay their percentage and do not make up the difference between what the settling party paid and the judgment. The plaintiff receives an amount less than the judgment ($50,000 + $60,000 + $60,000 + $60,000 + $60,000 = $290,000).

If the plaintiff settles with one of the five defendants for $80,000, which at trial turns out to be 26.67% of the plaintiff's judgment for $300,000, the plaintiff may still proceed against the remaining four defendants for 80% of the judgment (100% less 20%) (i.e., $240,000, or $60,000 each (each of the remaining four defendants is responsible for one-fifth of the judgment)). Although the plaintiff has settled for more than what the settling party's percentage would have been had there been no settlement (20% or $60,000), the non-settling defendants only pay their percentage and do not receive a credit for the settling party's overpayment. The plaintiff collects an amount greater than the judgment ($80,000 + $60,000 + $60,000 + $60,000 + $60,000 = $320,000).

Example: Assume a superfund suit with an owner, an operator and 300 generators as defendants. Assume that the trier of fact has allocated the owner with 10% responsibility, the operator with 20% responsibility, and the generators with 70% responsibility. Further assume that the generators represent 7,000,000 gallons and their percentage of responsibility is in direct proportion to their gallons. When the plaintiff settles with one generator, the plaintiff's recovery after judgment is reduced by the percentage of responsibility attributable to the settling defendant.

Therefore, if the plaintiff settles with one generator for $50,000, which is .33% of the plaintiff's judgment for $15,000,000, the plaintiff may proceed against the remaining owner, operator, and 299 generators for $15,000,000 less the percentage of responsibility attributable to the settling generator. Assume that the percentage of responsibility attributable to the settling generator would have resulted in the settling generator's share being .4% ($60,000), then the $15,000,000 judgment would have been reduced by .4% or $60,000. Although the plaintiff has settled for less than what the settling party's share would have been had there been no settlement (.33% or $50,000 rather than .4% or $60,000), the non-settling defendants only pay their share and do not make up the difference between what the settling party paid and the judgment. The plaintiff receives an amount less than the judgment ($50,000 + $14,940,000 = $14,990,000).

If the plaintiff settles with a generator for $80,000 (.53%) and that generator's share was only $60,000 (.4%), and the plaintiff ultimately recovers a judgment for $15,000,000, the plaintiff may still proceed against the remaining defendants for $14,940,000 (99.6%). By settling for more than the one defendant's share, the plaintiff collects an amount greater than the judgment ($80,000 + $14,940,000 = $15,020,000).

Under the *proportionate* credit rule:

* A settling defendant is discharged from all contribution claims.

* The *proportionate* credit rule is fully consistent with the proportionate fault theory of the modern tort law because each non-settling defendant does not pay more its equitable apportionment based on its proportionate fault.

* The *proportionate* credit rule eliminates the need for a "good faith" hearing and the expense and time associated with it. Be-

cause the proportionate credit is not based on the settlement, there is no purpose in determining whether the settlement was entered in "good faith."

The *proportionate* credit rule, as does the *pro tanto* rule, encourages defendants to settle by offering them a discharge from all liability for contribution. If later it is concluded that they should have paid more, they are still discharged from all liability for contribution. They not only do not have to pay the difference but they have also have saved transaction costs.

The *proportionate* credit rule, however, does *not* create the environment whereby as the number of parties settle and the remaining number of defendants dwindle, the non-settling parties face an increasing risk of having to shoulder a increasing financial responsibility, assuming that in the aggregate, the amount of the settlements will not amount to the settling parties share had they not settled. While under the *proportionate* credit rule, each defendant need not be concerned with what other defendants do because its amount of the judgment will remain the same even if all other defendants settle and settle for less than what their ultimate percentage should have been, each non-settling defendant will, however, need to be concerned with what settling defendants pay when the issue of the appropriate proportionate credit is raised at trial. The percentage attributed to each defendant, whether that party has settled or not, will need to be determined at trial.

A defendant's incentive to settle is based on the uncertainty of what its proportionate fault will be at trial (which involves demonstrating as high a proportionate fault on other defendants as possible—including those that have settled) and whether it can settle for less than what its projected proportionate fault would be.

Unlike the non-settling defendant under the *pro tanto* rule who may not settle if it believes that, by holding out for trial, other defendants will settle and pay some or all of its share of the judgment, the non-settling defendant under the *proportionate* credit

rule will always be liable for its proportionate share, regardless of what the settling defendants pay. Its proportionate share may in fact decrease if settling parties pay what could be argued as more than their proportionate share and this issue is not raised at trial. If, however, the defendant does not perceive such a windfall, and believes that there is no escape from its financial responsibility, this defendant may be encouraged to settle.

The *proportionate* credit rule is inconsistent with joint and several liability. The liability of a defendant is not joint and several but limited to that party's proportionate fault.

The *proportionate* credit rule also encourages the plaintiff to structure settlements which could yield the plaintiff more than one full recovery. As a corollary, the plaintiff will also structure settlements which would not yield less than one full recovery. The *proportionate* credit rule encourages the plaintiff to structure settlements erring on the high side of a projected judgment so as to minimize the disputes at trial over the proportionate credit attributable to settling parties (the defendants will only object if a settling party has paid less than its fair share) and to insure that the final yield after judgment will provide at least one full recovery. Thus the plaintiff will be more cautious in settlement efforts and more demanding of defendants.

The *proportionate* credit rule may impair the plaintiff's willingness to enter into partial settlements because the rule does not provide the plaintiff with certainty. By entering into partial settlements, the plaintiff neither knows the ultimate amount of the judgment nor the percentage reduction that will be enforced by the court. These facts will be known only after trial. This creates uncertainty whether the plaintiff will receive one full recovery.

The *proportionate* credit rule may dissuade the plaintiff from settling with defendants who are unable to pay their full percentage share due to a lack of insurance or limited assets. The *proportionate* credit rule is insensitive to the relative solvency of the settling defendant. The plaintiff absorbs the

loss if the defendant is unable to pay its full percentage share. . If the plaintiff does not settle with a marginally solvent defendant, the plaintiff may be able to shift some of this loss on to other defendants when the various percentages are determined at trial.

The *proportionate* credit rule may dissuade the plaintiff from settling because at trial the settling defendant is no longer a party and its percentage share is assessed without its interest being fully represented. The plaintiff must advocate not only its own freedom from fault but must also advocate the minimal fault of the settling defendants. The latter task must be accomplished by the plaintiff even though the settling defendants may have information which is not available to the plaintiff.

### Conclusion

Because the *pro tanto* rule creates an additional incentive for defendants to settle and reduces some of the uncertainties that the plaintiff must face when structuring a settlement, it appears to me that the *pro tanto* rule, rather than the *proportionate* credit rule, would enhance the settlement efforts of this case.

Sincerely,
/s/ Martin A. Frey

Martin A. Frey
Settlement Judge

cc:  Larry G. Gutterridge, Esquire

Claire V. Eagan, Esquire

William C. Anderson, Esquire

Steve Harris, Esquire

John H. Tucker, Esquire

Bradley Bridgewater, Esquire

Charles W. Shipley, Esquire