The STATE OF NEW YORK, Plaintiff,

v.

SOLVENT CHEMICAL COMPANY, INC., ICC Industries, Inc., Mader Capital Corporation, 3163 Buffalo Avenue Corporation, and Corigan Sanoian, Individually and d/b/a Quad Technologies, Inc., Defendants.

SOLVENT CHEMICAL COMPANY, INC., ICC Industries, Inc., and Mader Capital Corporation, Defendants and Third–Party Plaintiffs,

v.

The UNITED STATES of America, E.I. Dupont De Nemours and Company, Occidental Chemical Corporation, and The City of Niagara Falls, New York, Frontenac Environmental Services, Inc., Laidlaw Transportation Company, Ltd., Consolidated Rail Corporation, Bema Company, Ltd., Eastman Kodak Company, and General Motors Corporation,

And Related Third–Party Action.

No. 83–CV–1401C.

United States District Court, W.D. New York.

Oct. 8, 1997.

As Amended Oct. 15, 1997.

**161**

Dennis C. Vacco, Attorney General of the State of New York (Robert E. Hernan, Assistant New York State Attorney General, of Counsel), New York City, for the State of New York.

Jaeckle Fleischmann & Mugel, LLP (Dennis P. Harkawik, of Counsel), Buffalo, NY, for Solvent Chemical Company.

Irwin F. Roth, New York City, for ICC Industries, Inc.

Gellman, Brydges & Schroff (Richard E. Stanton, of Counsel), Niagara Fails, NY, for the City of Niagara Falls.

Duke, Holzman, Yaeger & Photiadis (Peter G. Ruppar, of Counsel), Buffalo, NY, for Mader Capital Corporation.

United States Department of Justice, Environmental and Natural Resources Division, Environmental Defense Section (Alan Birnbaum, of Counsel), Washington, DC, Denise E. O'Donnell, Acting United States Attorney (Mary K. Roach, Assistant United States Attorney, of Counsel), Buffalo, NY, for United States.

Corigan Sanoian, Niagara Falls, NY, Pro Se.

Piper & Marbury (Anthony L. Young, of Counsel), Washington, DC, Phillips, Nizer, Benjamin, Krim & Ballon (Martin B. Wasser, of Counsel), New York City, Phillips, Lytle, Hitchcock, Blaine & Huber (Morgan G. Graham, of Counsel), Buffalo, NY, for Occidental Chemical Corporation.

Phillips, Lytle, Hitchcock, Blaine & Huber (Kevin M. Hogan and David P. Flynn, of Counsel), Buffalo, NY, for AlliedSignal, Inc.

Jack A. Gellman, Niagara Falls, NY, Richard E. Stanton, Buffalo, NY, for City of Niagara Falls.

Bressler, Amery & Ross (Donald J. Cameron, II, of Counsel), Morristown, NJ, for Minnesota Mining and Manufacturing Co.

Husch & Eppenberger (Michael H. Wetmore, of Counsel), St. Louis, MO, Hodgson, Russ, Andrews, Woods & Goodyear (Rick W. Kennedy, of Counsel), Buffalo, NY, for Olin Corporation.

Buchanan Ingersoll (Daniel M. Darragh, of Counsel), Pittsburgh, PA, for E.I. DuPont de Nemours & Company.

Harris, Beach & Wilcox (Henry W. Killeen, III, of Counsel) Buffalo, NY, for Laidlaw Transportation Co., Ltd.

Consolidated Rail Corporation (Rodney Griffith, Associate General Counsel—Environmental Law), Philadelphia, PA, for Consolidated Rail Corporation.

Raichle, Banning, Weiss & Stephens (R. William Stephens, of Counsel), Buffalo, NY, for General Motors Corporation.

Beveridge & Diamond (Christopher F. Regan, of Counsel), Washington, DC, for the Dow Chemical Company and PPG Industries, Inc.

Sullivan, Benatovich, Oliverio & Trimboli (B.P. Oliverio, of Counsel), Buffalo, NY, for Bema Company, Ltd.

Buchanan Ingersoll (John T. Kolaga, of Counsel), Buffalo, NY, for Dover Chemical Corporation.

Lippes, Silverstein Mathias & Wexler (Deborah J. Chadsey, of Counsel), Washington, DC, for Colonial Metals.

Rodgers, Menard & Coppola (Patricia S. Stroman, of Counsel), Buffalo, NY, ARCO (Kevin R. McSpadden, of Counsel), Los Angeles, CA, for Atlantic Richfield Company.

Saul, Ewing, Remick & Saul (John F. Stoviak, of Counsel), Philadelphia, PA, for Cerro Metals Products Company.

DECISION and ORDER

CURTIN, District Judge.

By motions filed on April 25, 1997, and May 13, 1997, the State of New York (the "State") seeks approval of a total of six consent decrees (Items 570 and 580). The order sought would resolve this CERCLA action against certain defendants and third-party defendants. However, even if the decrees are approved, many claims by defendant Solvent Chemical Company, Inc. ("Solvent") against other third-party defendants remain open, as well as Solvent's motion to file a third-party complaint against additional third-party defendants (Item 549) and its motion for attorney's fees from its former counsel, Damon & Morey.

## BACKGROUND

### I. *The Site and the Parties*

The site at issue is located at 3163 Buffalo Avenue in the City of Niagara Falls, New York, (also known as Inactive Hazardous Waste Disposal Site No. 932096), in the heart of the chemical manufacturing section of the city. During World War II, the United States contracted with E.I. duPont de Nemours & Company ("DuPont") to construct a facility to manufacture impregnite. The United States, through the Army Chemical Warfare Service, owned the site from approximately 1941 until 1972. DuPont was at the site until the end of the war. In 1945, the United States mothballed the plant until 1951.

During the Korean War, the United States entered into a contract with Hooker Chemical Corporation, now known as Occidental Chemical Corporation ("Occidental"), to continue the manufacturing operations on the site. The site was inactive for several years from 1964 until 1972, when it was transferred to the City of Niagara Falls. The City immediately conveyed substantially all of the property to Solvent, which manufactured chlorobenzene and other chlorinated benzene compounds on the site until 1979. During Solvent's period of operation, certain third-party defendants transported various chemical materials to Solvent.

In 1973, Solvent was acquired by ICC Industries Inc. ("ICC"). In 1978, Solvent sold the site to Transit Holding Company ("Transit"), a predecessor of Mader Capital Corporation ("Mader"), and Solvent leased the site back and finally ceased operations in 1979. Mader and its predecessors owned the site from 1978 through November 1980, when it was transferred to 3163 Buffalo Avenue Corporation ("3163 Buffalo"), which leased the property to Frontenac Environmental Services, Inc. ("Frontenac"). Frontenac had a corporate relationship with Laidlaw Transportation Company Ltd. ("Laidlaw"). In May 1983, the stock in 3183 Buffalo was sold to Corigan Sanoian, who has owned the site since that time.

On December 9, 1983, the State brought this action against Solvent, ICC, Mader, 3163 Buffalo, and Corrigan Sanoian, individually and doing business as Quad Technologies, Inc. At that time, Frontenac was still present on the site. In 1986, Solvent joined the United States, DuPont, Occidental, and the City of Niagara Falls as third-party defendants. In 1994, ICC, Solvent, and Mader filed third-party complaints against Frontenac, Laidlaw, Consolidated Rail Corporation, General Motors Corporation ("GMC"), and several others seeking contribution and indemnification.

On December 1, 1995, Solvent filed an amended third-party complaint against AlliedSignal, Inc. ("AlliedSignal") and seventeen other companies which had supplied Solvent with materials (Item 390). Currently pending is Solvent's motion to file a fifth amended third-party complaint naming Olin Corporation ("Olin") and over fifty additional third-party defendants (Item 549).

In 1989, Solvent, Mader, the United States, DuPont, and Occidental conducted a preliminary environmental investigation of the site. In 1992, these parties submitted a report to the State. Between 1992 and 1995, the New York State Department of Environmental Conservation ("DEC") conducted a remedial investigation/feasibility study ("RI/FS") at the site. These studies confirmed that many of the substances present at the site were "hazardous substances," as

defined in section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

Throughout 1995 and 1996, many of the principal parties met in order to try to work out a settlement. The DEC submitted a supplement to the RI/FS. In February 1996, the court granted a stay of discovery, at the request of Solvent and the State, to permit unimpeded settlement negotiations. Under this stay, third-party defendants were entitled to access to completed discovery, but they could not seek discovery on their own until the end of January 1997, when the stay was lifted. Although the State made some contact with some third-party defendants, the main focus of these negotiations was between the State and Solvent, DuPont, Occidental, Mader, the United States, and the City of Niagara Falls. Even though the State made overtures to the third-party defendants to settle, no earnest effort was made to get them to participate in settlement negotiations.

During these negotiations, the State offered the principal parties an early opportunity to review the draft RI/FS and allowed these parties to provide technical input into the RI/FS. The State also invited non-party Olin to attend or to submit comments with regard to any possible approaches to remediation. Finally, in the fall of 1996, the negotiations resulted in an understanding covering the broad terms of possible settlements, and the record of decision ("ROD") was issued on December 31, 1996 (Item 619). Although the State, Solvent, and the other settling parties had reached agreement by the end of 1996, the State agreed to delay seeking court approval until March 7, 1997, to give Solvent an opportunity to resolve certain issues with its insurance carrier and to attempt to settle with the third-party defendants. The March date was extended to April 1997, and the State ultimately filed its motions to approve the consent decrees on April 25, 1997, and May 13, 1997. During this holding period, Solvent was able to agree to a few minor settlements with third-party defendants; however, Solvent was not able to come to terms with the third-party defendants who now object to this court's approval of the proposed consent decrees.

Robert Hernan, Esq., attorney for the State, estimates the total cost of the remedy, including the cost of the State's investigation, covered by the consent decrees to be $8,650,-000 (Item 571). This figure, he says, represents ninety-eight percent of the amount needed for clean-up of the site (Item 625, p. 7).

## II. *The Consent Decrees*

On April 25, 1997, the State lodged five proposed consent decrees with the court. These decrees are between the State and (1) Solvent; (2) ICC; (3) Mader; (4) the United States, DuPont, and Occidental; and (5) Cerro Metal Products Company ("Cerro"), Union Carbide Corporation ("Union Carbide"), Minnesota Mining and Manufacturing Company ("3M"), Ciba–Geigy Corporation ("Ciba"), and Merck & Co., Inc. ("Merck"). On May 13, 1997, the State and the City of Niagara Falls submitted a proposed consent decree which provides that the City use its best efforts to foreclose on the subject site for failure to pay taxes, in return for a release from the State for certain potential liability and full contribution protection (Item 580). Several non-settling parties then submitted objections to the consent decrees.

Pursuant to the decrees, the settling defendants have agreed to either pay certain amounts for response costs or to undertake remedial actions on the property at and near 3163 Buffalo Avenue. The effect of the decrees will be to reimburse the State for the costs of investigating the site and to provide for complete remediation as set forth in the ROD (Item 619). Assuming that the total past and future costs incurred and to be incurred at the site exceed $8 million, the State submits that the value of the settlement represents approximately ninety-eight percent of all past and potential costs.

In its proposed consent decree, Solvent agrees to undertake and to complete, subject to State oversight and approval, all remedial actions set forth in the ROD, excluding the demolition and on-site sewer cleaning component to be performed by Mader. The estimated value of Solvent's contribution under its consent decree is approximately $6,685,-000 (Solvent Consent Decree, ¶ 8). Con-

struction of the remedy for the contaminated area on the Olin property near Buffalo Avenue, between the site and Gill Creek, will be commenced by Solvent no later than one year after the date of the decree. The determination as to whether additional bedrock remediation is necessary will be made by the State six years after substantial completion of the installation of pumping wells within the bedrock B–Zone. Any such determination by the State will be binding unless Solvent files a notice of petition requesting review by the court. The court will review the State's determination only to ascertain whether the decision is arbitrary and capricious (*Id.*, ¶¶ 9, 36–38).

The Solvent consent decree sets out a detailed schedule for the design of the remedial plan, with initial work beginning within sixty days of the entry of the proposed decree (*Id.*, ¶¶ 9–13). The decree also imposes on Solvent detailed and frequent reporting requirements (*Id.*, ¶¶ 14–22). The DEC will review and approve all work plans, and disagreements will be reviewed under an arbitrary and capricious standard. A force majeure provision excuses Solvent from completion of activities during time periods reasonably attributable to an act of God, war, riot, accident, or labor dispute (*Id.*, ¶ 40).

Solvent will exercise good faith efforts to obtain whatever authorization is necessary to perform its obligations under the decree. Where Solvent is unable to gain such authorization, the State will use its authority to gain access (*Id.*, ¶ 26). Solvent will pay all oversight costs incurred by the State in the enforcement and monitoring of the remediation activities (*Id.*, ¶ 28). The parties have stipulated to monetary penalties for each day Solvent is late in the completion of remedial work and reports (*Id.*, ¶¶ 29–35).

The decree includes a covenant not to sue subject to reopeners, where the State elects to institute proceedings for additional costs if unknown conditions at the site are uncovered or if the State receives previously unknown information (*Id.*, ¶¶ 41–43). Solvent is protected from any claims for contribution by any other parties (*Id.*, ¶ 49). The State has agreed not to pursue any of the non-settling third-party defendants for the portion of past costs not recovered. Consequently, the non-settlors are not exposed to any joint and several liability claims by the State for the response costs not recovered (*Id.*, ¶ 41).

The general provisions of the consent decrees with the other settling parties are largely identical to the agreement with Solvent, but each settlor has assumed specific obligations. ICC has agreed to assume responsibility for all of Solvent's obligations under the Solvent consent decree in the event of default by Solvent (ICC Consent Decree, ¶¶ 5–7). As noted above, Mader has agreed to undertake and complete certain demolition and sewer cleaning components of the ROD (Mader Consent Decree, ¶¶ 5–6). Occidental and DuPont will each pay $216,250, and the United States will pay $432,500 (United States, DuPont, and Occidental Consent Decree, ¶¶ 5–6). Cerro will pay $38,000, Ciba, Union Carbide, and Merck will pay $25,000 each, and 3M will pay $10,000 (Cerro, Union Carbide, 3M, Ciba and Merck Consent Decree, ¶ 5). The City of Niagara Falls will initiate all legal actions required to foreclose for tax delinquencies on the property at 3163 Buffalo Avenue (City of Niagara Falls Consent Decree, ¶ 5).

According to the State, its central goal was the completion of the remedy set out in the ROD. Since the State considered Solvent to be the party primarily responsible, it was critical that Solvent commit to the implementation of the ROD. Such an agreement was impossible without a determination of the cost of the proposed remedy. An estimated cost of the remedy was only reached after a detailed investigation of the site over a number of years and intensive meetings by technical consultants on behalf of the interested parties during 1996. In addition, Solvent was given additional time to present a claim to its insurer and to settle with third-parties

### III. *Objections to the Consent Decrees*

Laidlaw, AlliedSignal, GMC, PPG Industries, Inc. ("PPG"), The Dow Chemical Company ("Dow Chemical"), and non-party Olin have filed objections to the proposed consent decrees. For the most part, they object to the State's proposed settlements with Solvent and ICC. These third-party defendants

have not been successful in settling the claims Solvent brought against them, and they contend that they were never given a fair opportunity to settle either with the State or with Solvent. Laidlaw, AlliedSignal, and GMC each complain that while other third-party defendants who settled received contribution protection from the State, they have been forced to negotiate directly with Solvent for contribution protection. These parties submit that Solvent has required rapid settlements at "extortionate" rates in order to confer contribution protection on them.

These parties are also concerned that they may be subject to liability to Solvent for an amount that exceeds their proportionate share of liability. AlliedSignal argues that this inequitable result would occur if Solvent pays more than its equitable share of response costs, and is subsequently permitted to recover the excess amounts, effectively paid on behalf of settling third parties, from the non-settling third parties (Item 4, p. 16; Item 608, p. 3). GMC, on the other hand, argues that the inequitable result would occur if Solvent pays too little, and the cost of remediation leaves the non-settlors with a balance due that exceeds their share of liability (Item 589).

In support of its argument that the settlement is unfair, AlliedSignal calls attention to the agreement reached with Dover Chemical Corp. ("Dover"), a subsidiary of ICC. Dover was afforded an opportunity to negotiate a settlement directly with the State. As a result of these negotiations, Dover is to be dismissed from the suit, and is to receive contribution protection without contributing anything to the settlement. Further, Allied-Signal argues that the contamination at the site is mainly due to Solvent's operations and is therefore not the fault of Solvent's suppliers. AlliedSignal also contends that after it was joined as a third-party defendant in December 1995, the State made only a limited attempt to obtain contribution from it, and Solvent failed to make any demand until after January 31, 1997. Because of the stay of discovery, AlliedSignal had no opportunity to conduct independent discovery until January 31, 1997, when the stay was lifted.

The objectors urge the court to adopt a proportionate liability approach to third-party contribution claims brought by Solvent. They submit that if the court decides to apply the Uniform Comparative Fault Act (UCFA), 12 Uniform Laws Annotated, pp. 123–153 (1996 ed.), in conjunction with CERCLA section 113(f)(1) to this case, then they will no longer object to the consent decrees on the aforementioned grounds. They contend that if the court decides to apply the Uniform Contribution Among Tortfeasors Act ("UCATA"), 12 Uniform Laws Annotated, pp. 185–290 (1996 ed.), which would theoretically enable Solvent to recover from them any excess response costs Solvent paid that equitably ought to have been paid by other settling parties, then they will continue to object to the consent decrees on fairness grounds.

Solvent contends that the court does not need to address the issue of whether the UCFA or the UCATA should apply at this time, and urges the court to wait until the appropriate time in the anticipated third-party action(s) to make such a determination (Item 623, pp. 9–12).

### DISCUSSION

#### I. The Standard of Review of Consent Decrees

A proposed consent decree must be fair, reasonable, and consistent with the purposes of CERCLA before it will be approved by the court pursuant to Sections 113(f) and 122(c),(l), 42 U.S.C. §§ 9613(f) and 9622(c), (l). This court recognizes that its function in reviewing consent decrees apportioning CERCLA liability "is not to substitute its judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." *United States v. Hooker Chemicals & Plastics Corp.,* 540 F.Supp. 1067, 1072 (W.D.N.Y.1982), *aff'd.,* 749 F.2d 968 (2d Cir. 1984). The limited standard of review reflects a clear policy in favor of settlements. *Id.* In addition, "[a]n evaluation of the Proposed Decree which overemphasizes the importance of its potential effect on the non-settlors ... would frustrate the statute's goal

of promoting expeditious resolution of harmful environmental conditions." *In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, 1029 (D.Mass.1989).

■ Far more important than the exact share to be paid by each responsible party is the fact that the settlement is clearly in the public interest. None of the parties to the action has argued to the contrary. A comprehensive cleanup plan is in place; and the parties have represented to the court that remediation can begin within a very short time of the entry of the consent decrees. The court will seriously consider this important public interest in evaluating the fairness of the proposed consent decrees.

■ As noted above, Solvent contends that the court does not need to address the issue of whether the UCFA or the UCATA should apply at this time (Item 623, pp. 9–12). Because this court is not convinced that the consent decrees, and the process by which they were reached, are completely fair to the non-settling third-party defendants, the court believes that this is the appropriate time to determine which contribution model shall be applied hereinafter.

## II. *Equitable Share Versus Amount Paid—The UCFA Versus the UCATA*

### A. The Framework

CERCLA §§ 113(f)(1) and (f)(2) govern claims for contribution among responsible parties. Section (f)(1) provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) ..., during or following any civil action under section 9606 ... or under section 9607(a).... Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1). Section (f)(2) provides:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

■ In contribution actions in which one private party settlor seeks to recover from non-settlors, courts have the discretion under CERCLA section 113(f)(1) to allocate liability using "equitable factors." The majority of courts undertaking to allocate liability under this section have applied section 6 of the UCFA. UCFA section 6 reduces a non-settlor's liability by the amount of the settlor's equitable share of the obligation, as determined by a trial on liability. Specifically, section 6 provides that:

> A release ... entered into by a claimant and a person liable discharges that person from all liability for contribution ... [and] the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation.

Some courts, however, have applied section 4 of the UCATA, also known as the *pro tanto* approach. Under this approach, the liability of non-settling defendants is reduced by the amount specified in the settlement agreement. Specifically, section 4 provides in relevant part:

> When a release ... is given in good faith to one or more persons liable in tort for the same injury ... [i]t does not discharge any of the other tortfeasors from liability[,] ... but it reduces the claim against the others to the extent of any amount stipulated by the release ... or in the amount of the consideration paid for it, whichever is the greater ...; and, [i]t discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

Under the proportionate share rule, the liability of non-settlors is reduced by the settlor's equitable share of liability. By contrast, under the *pro tanto* rule, the non-settlors' liability is reduced by the dollar amount of the settlement. Under 113(f)(1), the parties bear the responsibility based on their proportionate fault.

Solvent argues that the court should apply section 113(f)(2), and thereby automatically apply the *pro tanto* approach to all future contribution actions in this case. Alternatively, Solvent argues that if the court decides that section 113(f)(1) applies, then it should opt to apply the UCATA.

## B. CERCLA § 113(f)(2) Does Not Apply

■ Solvent argues that section 113(f)(2) applies, and that the plain language of the statute protects those parties who have settled with the State from contribution claims and reduces the potential liability of non-settlors by the amount of the settlement. Solvent argues that by applying section 113(f)(2), there is no need to consider whether the UCFA or the UCATA apply. Solvent submits that:

> Where, as here, the State has been made whole by private parties, it will be the private party settlors who pursue the non-settlors. Nothing in § 113(f)(2) suggests that the credit rule set forth therein will not apply in such situations. The objecting parties have not, and cannot, cite any case involving settlements with the government in which the § 113(f)(2) credit rule was not applied.

Item 641, p. 6.

The objectors concede that as to state claims section 113(f)(2) has been interpreted as requiring application of the UCATA. *See Hillsborough County v. A & E Road Oiling Service, Inc.,* 853 F.Supp. 1402, 1409 (M.D.Fla.1994). Section 113(f)(2) provides that when a party settles with the government, the non-settling party's liability is reduced only by the amount of the settlement.

In support of its argument that section 113(f)(2) applies, Solvent cites *Allied Corp. v. Frola,* 730 F.Supp. 626, 639 (D.N.J.1990),

which Solvent claims is "on all fours factually with the instant case" (Item 642, p. 5). In that case, the court applied neither the UCFA nor the UCATA because it found that section 113(f)(2) itself governed. Despite Solvent's assertions, *Frola* does not apply to the present case as the facts are not similar. In *Frola,* non-settlors sued the settlor for contribution. The court found that section 113(f)(2) barred such an action. In the present case, the anticipated contribution action is to be brought by a settlor against non-settlors.

Solvent's argument that section 113(f)(2) applies also ignores important decisions in which other courts have applied section 113(f)(1) and the provisions of the UCFA to settlement arrangements between private parties after the government has settled and is no longer a party. For example, in *United States v. GenCorp,* 935 F.Supp. 928, 932–35 (N.D.Ohio 1996), the United States entered a consent decree with some of the defendants. After a round of arbitration involving certain defendants, the court ultimately held that while the United State was free to pursue further claims under the UCATA, the UCFA would govern the claims brought by third-party plaintiffs against non-settlors for contribution. Similarly, in *United States v. SCA Services of Indiana,* 827 F.Supp. 526, 533–36 (N.D.Ind.1993), the government settled with certain parties and the court held that third-party claims would be brought under the UCFA. Again, in *United States v. Colorado & Eastern Railroad Co.,* 50 F.3d 1530 (10th Cir.1995), in circumstances similar to the facts in the present case, where plaintiff United States had resolved its action against certain main defendants, the circuit court held that the district court was in error in holding that the non-settling third-party defendants were jointly and severally liable by applying 113(f)(2) instead of 113(f)(1). The circuit court held that the liability of those third-party defendants who had not entered into judicially approved settlement should be determined as part of a contribution claim, brought under section 113(f)(1).

Solvent also argues that the settlors should be treated as the State for the purpose of applying section 113(f)(2) and the *pro tanto*

rule. Solvent cites *City of New York v. Exxon Corp.,* 697 F.Supp. 677 (S.D.N.Y. 1988), for the proposition that when the State has participated in the negotiations, asserted claims against the settlors, and approved the settlement "[t]o deny the settling parties the statutory benefits under § 113(f)(2) under these circumstances would be unduly formalistic." *Exxon,* 697 F.Supp. at 686. *Exxon* does not stand for the proposition advanced by Solvent. The *Exxon* court put the City in the place of the State because of the close interrelationship between State environmental enforcement and recovery powers, and the same powers conferred on municipalities under CERCLA. This reasoning is not applicable to the present case, as there is nothing in that opinion that persuades this court to place Solvent in the position of the State.

## C. Section 113(f)(1) and the UCFA Apply

In addressing the question of whether the UCFA or the UCATA should apply to private party claims, courts have recognized the distinction between the provisions of sections 113(f)(1) and 113(f)(2). Under section 113(f)(1), which applies to allocation of costs among private parties, the court must consider equitable factors. The omission of this language in section 113(f)(2) appears to dictate application of the UCFA in actions between private parties.

This finding is consistent with the purposes behind sections 113(f)(1) and 113(f)(2). When the government reaches a settlement in a CERCLA action, it does not bear the risk that it settled for too little with one party, because under the UCATA, it may still pursue the non-settling parties for the remainder. This result is consistent with the joint and several liability standards under CERCLA section 107. The issue presently before the court, however, has nothing to do with the settlement risk that the government bears. The government bears no risk in the present case because it has settled its entire claim. The issue here is who bears the risk that Solvent, a private party seeking contribution from other private parties, settled for too little with its co-defendants in entering into one of the multiple consent decrees currently pending approval. Solvent should bear that risk and section 6 of the UCFA should apply.

Relying on *Atlantic Richfield v. American Airlines Inc.,* 836 F.Supp. 763 (N.D.Okl.1993) and *City and County of Denver v. Adolph Coors Co.,* 829 F.Supp. 340, 345 (D.Colo. 1993), Solvent argues that the UCATA approach should be applied in this case, even if the court finds that CERCLA section 113(f)(1) governs. In both *Atlantic Richfield* and *Adolph Coors,* the District Courts considered the relationships among the parties and determined that the most efficient and fair approach was to apply the UCATA, rather than the UCFA, for third-party claims.

In *Atlantic Richfield,* the court concluded that it had the discretion to apply either rule and, after a detailed analysis, determined that the UCATA should apply. However, in that case there were several hundred defendants apparently with somewhat equal responsibility. The threat of the use of the UCATA was an effective and not an unfair way of forcing non-settling defendants to come to the bargaining table. Those circumstances are remarkably different from the present case, in which Solvent has always been considered the main polluter, and the remaining non-settlors peripheral at best. In *Adolph Coors,* there also were many defendants, and the court decided that the policy of encouraging settlement was the most important consideration in determining which contribution scheme to apply. Furthermore, the *Adolph Coors* court noted that the amount paid by the settling defendants and their equitable share of the liability appeared to be the same amount. This is not a conclusion that this court can reach in the present case.

The objectors note that these cases were both decided before the Supreme Court decided *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). *In McDermott,* the Court established as federal common law that the proportionate share rule is superior to the *pro tanto* rule in many circumstances. Solvent asserts that the objectors' reliance on *McDermott* is misplaced, as that case was an admiralty action, not a CERCLA action (Item 623, p. 11).

AlliedSignal responds that the rule in *McDermott* is not limited to admiralty law (Item 633, p. 2). The court believes that the circumstances in *McDermott* are different from the present case, and it is questionable whether the reasoning of that case should be applied here.

Solvert's argument that section 113(f)(2) and the UCATA should apply is not persuasive. Some fourteen years after the complaint was filed, it is difficult to understand the argument that the UCATA should be used because it leads to early settlement. The decision made in *Adolph Coors* and *Atlantic Richfield* may provide guidance in cases where numerous parties are all likely to face roughly equal proportionate liability. But in the present case, the State identified Solvent as the principal responsible party, and focused settlement efforts on reaching an agreement with Solvent. By agreeing to provide eighty percent of the cost of remediation, as estimated by the State, it is evident that Solvent knew it had the most to gain from a favorable settlement. Because of the drawn-out investigation and intensive negotiations, Solvent was always in the best position to assess and value its own proportionate liability. Now that the party with the best information on the ultimate cost of remediation has placed its bet, the other parties are entitled to a precise determination of their equitable share before anteing up. The UCFA will best facilitate the most equitable resolution of this litigation.

The UCFA will also produce the most efficient result. I find merit to the non-settlors' argument that in pursuing a settlement with Solvent, the State suspended negotiations with them. If the UCATA is applied, then the court would have to hold a hearing on the fairness of the negotiations now in order to approve the settlement. Such a hearing is not required under the UCFA approach, as the non-settlors will not be liable for any more than their equitable share.

### CONCLUSION

Because any future contribution actions brought by Solvent will be governed by section 6 of the UCFA, the court finds that the proposed consent decrees are fair and equitable, and are not unreasonable or contrary to public policy. The six proposed consent decrees are approved and shall be filed forthwith. Included in the motion to file the consent decrees, there was also a motion by the State for leave to file an amended complaint. That motion is granted.

There are additional motions pending that are not addressed by this order; most notably, Solvent's motion to file a third-party complaint against additional third-party defendants (Item 549) and its motion for attorney's fees from its former counsel, Damon & Morey. Once the consent decrees are filed, the court will set a briefing schedule for addressing these motions.

So ordered.