The State of NEW YORK, Plaintiff,

v.

**SOLVENT CHEMICAL COMPANY, INC., et al., Defendants.**

No. 83–CV–1401C.

United States District Court, W.D. New York.

Feb. 27, 2003.

---

Jaeckle, Fleischmann & Mugel, LLP, Dennis P. Harkawik, of counsel, Buffalo, NY, for Solvent Chemical Company, Inc.

Husch & Eppenberger, LLC, Michael H. Wetmore, of counsel, St. Louis, MO, for Third–Party Defendant Olin Corporation.

Stephens & Stephens, LLP, R. William Stephens, of counsel, Buffalo, NY, for Third–Party Defendant General Motors Corporation.

CURTIN, District Judge.

Third-party plaintiffs Solvent Chemical Company, Inc. and ICC Industries, Inc. (collectively referred to herein as "Solvent") have filed a joint motion pursuant to Fed. R.Civ.P. 26(c) for a protective order barring certain discovery sought by third-party defendant Olin Corporation ("Olin") (Item 1178). Olin and third-party defendant General Motors Corporation have filed memoranda in opposition to the motion (Items 1187 and 1188), and oral argument was heard by the court on January 10, 2003. For the following reasons, and to the extent discussed herein, the joint motion for a protective order is granted.

### BACKGROUND

On October 29, 2002, Olin served a "Rule 30(b)(6) Deposition Notice and Rule 34 Request for Production of Documents" upon Solvent directing designation of a corporate representative to testify and produce documents pertaining to Solvent's settlement agreements and negotiations with settling third-party defendants in this case (see Item 1181, Ex. A). By the parties' reckoning, Solvent has reached settlements with twenty-eight third-party defendants to date.

In response to Olin's discovery demand, Solvent's counsel wrote a letter to Olin's counsel on November 1, 2002 advising that the information sought by way of the deposi-

tion notice and document demand was "inadmissible, privileged and irrelevant," and inconsistent with the court's prior rulings with regard to allocation of liability under the Uniform Comparative Fault Act ("UCFA") (*id.*, Ex. B). Specifically, by order dated October 8, 1997, this court ruled that Solvent's private party contribution claims against non-settlors in this case are governed by the "proportionate share rule," codified at Section 6 of the UCFA, which provides: "A release . . . entered into by a claimant and a person liable discharges that person from all liability for contribution . . . [and] the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation." *State of New York v. Solvent Chemical Company, Inc.*, 984 F.Supp. 160, 166 (W.D.N.Y. 1997) (referred to by Solvent as the "First UCFA Order"). The court distinguished Solvent's contribution claims from claims in cases which have applied the so-called "*pro tanto*" approach, codified at Section 4 of the Uniform Contribution Among Tortfeasors Act ("UCATA"), under which the liability of non-settling defendants is reduced by the dollar amount specified in the settlement agreement. *Id.* at 167–69. Subsequently, on June 3, 1999, the court granted Solvent's motion to approve settlements with several third-party defendants upon finding that Section 6 of the UCFA "applies to all settlements with Solvent in this case . . ." (Item 900, p. 2) (referred to by Solvent as the "Second UCFA Order"), and specifically rejecting General Motors' argument that the other third-party defendants are entitled to know the specific terms of the settlement and the specific payment amount of each settling third-party defendant (*id.*).

Solvent contends that the application of the UCFA and the UCFA Orders have rendered the information sought by Olin irrelevant because the amount Solvent may recover from the non-settling parties will be reduced by the aggregate of the equitable shares of the settling third-party defendants, not by the total dollar amount they actually paid in settlement. According to Solvent, the assignment of the settling parties' equitable shares will be a matter of expert testimony, and Olin and the other

non-settlors will be able to inquire into the basis of the expert testimony at the appropriate time. Solvent also contends that designation of an officer pursuant to Rule 30(b)(6) to testify on its behalf with regard to settlement matters will unnecessarily embroil the parties in attorney-client privilege issues. According to Solvent, the settlement negotiations were conducted primarily by litigation counsel from Jaeckle, Fleischmann & Mugel, who drafted and executed the settlement agreements on Solvent's behalf and only communicated with Solvent's General Counsel, Paul Falick, for approval after a tentative settlement had been reached.

Olin and General Motors respond that in order to properly prepare to question Solvent's allocation expert, they must be permitted to discover the dollar amount each third-party defendant settled for, the negotiations leading up to each settlement agreement, and the agreements themselves. The non-settlors argue that this information is relevant to the equitable share determination, as indicated by the court's holding in the October 8, 1997 order that the UCFA approach is appropriate because "the other parties are entitled to a precise determination of their equitable share before anteing up." *Solvent Chemical*, 984 F.Supp. at 169.

### DISCUSSION

As discussed, Solvent asserts two general grounds in support of its request for a protective order: (1) that the information sought is irrelevant in light of the court's UCFA Orders, and (2) that the Rule 30(b)(6) notice threatens the attorney-client privilege. Each of these grounds is discussed in turn.

### 1. Relevance of Settlement Information

■ As set forth at length in this court's October 8, 1997 order, where the defendant in a CERCLA action has resolved its liability with the government, the liability of non-settling third-party defendants is determined by private party contribution claims brought under CERCLA § 113(f)(1). In resolving contribution claims under this section, "the court may allocate response costs among lia-

ble parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 113(f)(1); *Solvent Chemical*, 984 F.Supp. at 166; *see also Kerr–McGee Chemical Corporation v. Lefton Iron & Metal Company*, 14 F.3d 321, 326 & n. 4 (7th Cir.1994) (listing equitable factors courts may consider, including so-called "Gore factors" [1]). The majority of courts undertaking allocation under Section 113(f)(1) have applied the "proportionate share rule" of Section 6 of the UCFA, which reduces a non-settlor's liability by the amount of the settlor's equitable share of the obligation, as determined at trial. *Id.*

Under this approach, "a non-settling party may offset its liability by a settling party's equitable share of liability. The effect of this provision is to impose upon the claimant who settles with a party—rather than upon a non-settling party—the risk that the settlement amount is disproportionately small." *United States v. GenCorp, Inc.*, 935 F.Supp. 928, 932 (N.D.Ohio 1996) (cited with approval by this court in its June 3, 1999 order). Based on this rationale, in the context of judicial determination of the fairness of settlements between and among more than two dozen parties in the case, the court in *GenCorp* denied a non-settling third-party defendant's request for disclosure of the financial terms of the individual settlements. The court stated:

> While disclosure of settlement amounts and allocations of liability is the norm, the Court is not convinced it is a *sine qua non* of a finding of fairness and reasonableness. Under the circumstances of this case, the process itself assures the conclusion that the settlements are fair, reasonable and satisfy CERCLA requirements. The proponent parties, standing at risk for collecting too little, have every incentive to ensure that each settling party pays its full share. Each settling party has every in-

centive to pay whatever is necessary to extricate itself from the case.

*Id.* at 934.

Similarly, in *United States v. Kramer*, 19 F.Supp.2d 273 (D.N.J.1998), also relied on by this court in its June 3, 1999 order, the court approved consent decrees negotiated through a group-wide settlement process involving over 300 potentially responsible parties which "attempt[ed] to replicate the result which would have occurred in an allocation of responsibility by the court after trial under CERCLA Section 113(f) . . . ." *Id.* at 278. In doing so, the court rejected the claims of a sole non-settling third-party defendant that the allocated share assigned to it through the settlement process was too high, and that the consent decrees were unfair because they did not disclose the individual settlement amounts. The court found that since "the ultimate measure of accountability in any environmental case is the extent of the overall recovery, not the amount of money paid by any individual defendant," *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1086 (1st Cir.1994), *cited in Kramer*, 19 F.Supp.2d at 283, the settling parties need not disclose the amounts of their individual monetary settlements, or any other information about their bases of settlement allocation or their individual proportions of site liability. Instead, the court found it "sufficient that the terms, rationales, and bases of the Consent Decrees have been disclosed on a group-wide basis including all settling parties, from which the court may determine whether the group's proposed settlement is fair, reasonable, and faithful to CERCLA." *Id.*

Olin downplays the significance of the holdings in these cases based on the litigation context in which they were decided—as mentioned, during the consent decree/settlement approval process. As Olin points out,

---

1. The "Gore factors," so named as part of a 1980 House Superfund Bill sponsored by then-congressman Albert Gore, include (1) the ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished, (2) the amount of the hazardous waste involved, (3) the degree of toxicity of the hazardous waste involved, (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste, (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste, and (6) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment. *Kerr–McGee*, 14 F.3d at 326 n. 4; *see also Norfolk Southern Railway Company v. Gee Co.*, 2002 WL 31163777, at *32 & n. 28 (N.D.Ill. September 30, 2002).

this case has progressed beyond the approval of consent decrees and settlements to final discovery and trial preparation, and the focus has shifted to the determination of the equitable shares of each settling and non-settling party for the purposes of allocation under CERCLA Section 113(f).

Olin relies in large part on the holding and rationale of *Bennett v. LaPere,* 112 F.R.D. 136 (D.R.I.1986), a medical malpractice case in which the court granted the non-settling hospital's motion to compel production of a settlement agreement reached between the plaintiffs and the settling physicians. However, the *Bennett* court specifically recognized that the discovery issues raised by the parties in that case were to be resolved by reference to the UCATA. *Id.* at 138. As discussed above, this court has ruled that the UCFA, and not the UCATA, applies to this case.

Olin also points out that as this litigation has progressed, the cost estimate for the remediation of the site has increased steadily from $8.5 million to $24 million. According to Olin, those third-party defendants who settled early based on a percentage of the cost estimate at the time will ultimately have paid less than their equitable share. This position fails to account for the clear legislative policy underlying CERCLA § 113(f) to encourage early settlement, as recognized by several courts. *See, e.g., United States v. Alcan Aluminum, Inc.,* 25 F.3d 1174, 1184 (3d Cir.1994) (Section 113(f) gives preference to early settlors by exposing non-settling PRPs to liability for the rest of the cleanup costs, even if that exposure exceeds amount non-settlor's actions added to overall cost of cleanup). As stated in *United States v. Compaction Systems Corp.,* 88 F.Supp.2d 339 (D.N.J.1999):

Congress, by the enactment of section 113, intended to expedite the cleanup of contaminated sites by encouraging early settlement, thus reducing the time and expense of enforcement litigation. This intent is served better "through settlements which provide funds to enhance environmental protection, rather than the expenditure of limited resources on protracted litigation."

*Id.* at 353 (quoting *In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, 1029 (D.Mass.1989)); *see also Kramer,* 19 F.Supp.2d at 286 n. 20 (risk of disproportionate liability encourages parties to resolve liability early or face responsibility for amounts not paid by settling defendants).

Accordingly, in the absence of any countervailing authority cited by Olin or General Motors, I find the rationale employed in the *GenCorp* and *Kramer* cases persuasive on the issue of the relevance of individual settlement information when applying the "proportionate share rule" of Section 6 of the UCFA. Following the UCFA approach in this case, the amount of contribution which Solvent will be able to recover from the non-settling parties will be reduced by the aggregate of the equitable shares of the settling third-party defendants, not by the amounts they actually paid in settling. Therefore, the relevant inquiry remaining for discovery is the assignment of equitable shares, which will be a matter of expert testimony subject to the comprehensive disclosure requirements of Fed.R.Civ.P. 26(a)(2)(B) (expert report shall contain, *inter alia,* complete statement of opinions and basis and reasons therefor; data or other information considered in forming opinions; and any exhibits to be used as summary or support of opinions).

For these reasons, I find that the majority of the settlement information sought by Olin in its deposition notice and document demand is not discoverable, in light of the court's ruling on the applicability of Section 6 of the UCFA when allocating contribution liability among private parties under CERCLA Section 113(f)(1). At oral argument, Solvent's counsel agreed to provide Olin and General Motors with a list of the third-party defendants who have settled and the amount that each settling party paid. The remaining information sought by Olin pertaining to the settlement negotiations and the specific terms of the individual settlement agreements will not be disclosed.

## 2. Attorney–Client Privilege/Work Product Issues

■ Solvent also contends that Olin's Rule 30(b)(6) notice should be quashed because

the deposition will inevitably embroil the parties and the court in attorney-client privilege or attorney work product issues. According to Solvent, the only corporate representative with information pertinent to the settlement activities at issue is Paul Falick, Solvent's General Counsel, whose involvement was limited to communications with litigation counsel regarding approval of the settlements.

Solvent cites *Securities and Exchange Commission v. Morelli*, 143 F.R.D. 42 (S.D.N.Y.1992), in which the defendants in a securities fraud action sought to depose the SEC or someone from its litigation team in an effort to discover factual information forming the basis for its claims of insider trading. The SEC moved for a protective order, contending that the information sought was protected by both the attorney-client privilege and the work product doctrine. The court found that the proposed Rule 30(b)(6) deposition constituted an impermissible attempt by defendant to discover protected work product, since it was designed to inquire into the mental processes and strategies of SEC counsel. As stated by the court:

> Given [the SEC]'s sworn, uncontroverted statement that all relevant, non-privileged evidence has been disclosed to the defendants, the Court is drawn inexorably to the conclusion that [defendants'] Notice of Deposition is intended to ascertain how the SEC intends to marshall the facts, documents and testimony in its possession, and to discover the inferences that plaintiff believes properly can be drawn from the evidence it has accumulated. However, ... "[s]uch material is accorded almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases."

*Id.* at 47 (quoting *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985)).

Similarly, in this case Solvent has submitted the sworn, uncontroverted affidavit of Dennis Harkawik, Esq., stating as follows:

> Solvent and ICC have already provided to Olin and all other third-party defendants all of the factual information in their possession that is relevant to the determination of [the parties'] equitable shares. Such information includes Solvent's own records concerning operations at the Site, technical data generated as part of numerous environmental investigations at the Site, and documents obtained from other parties in this case as well as from the New York State Department of Environmental Conservation. In addition, Solvent/ICC expect to offer expert testimony of the equitable shares of all of the parties in this case, and Olin and other non-settlers will be free to inquire into the basis of that expected testimony at the appropriate time.

(Item 1181, Harkawik Aff., ¶ 6). Given this representation, and in light of the discussion above with respect to the relevance of the information sought, this court is drawn to the conclusion that Olin's Rule 30(b)(6) notice serves only to ascertain the substance of confidential communications and the mental impressions of Solvent's corporate and litigation counsel in determining the reasonableness of the individual settlements reached with other third-party defendants.

To the extent Olin seeks to depose Solvent's litigation counsel to obtain settlement information, the *Morelli* decision also discusses "the negative light in which depositions of opposing counsel are held." *Morelli*, 143 F.R.D. at 47. As stated in *Morelli:*

> "Because deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26(c), Fed.R.Civ.P., protective order .... [D]eposition of the attorney [usually] merely embroils the parties and the court in controversies over the attorney-client privilege and more importantly, involves forays into the area most protected by the work product doctrine—that involving an attorney's mental impressions or opinions."

*Id.* (quoting *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.,* 117 F.R.D. 83, 85 (M.D.N.C.1987)). Thus, the rule has developed that a court should allow the taking of opposing counsel's deposition only where the party seeking the discovery has shown that (1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. *Shelton v. American Motors Corporation,* 805 F.2d 1323, 1327 (8th Cir.1986), *cited with approval in United States v. Yonkers Board of Education,* 946 F.2d 180, 185 (2d Cir.1991). Here, as the discussion above demonstrates, Olin cannot meet its burden of showing that the settlement information sought is relevant or crucial to the preparation of its case.

Finally, Solvent also cites *Alcan International Limited v. S.A. Day Manufacturing Co., Inc.,* 179 F.R.D. 403 (W.D.N.Y.1998), in which the court denied a motion to compel a Rule 30(b)(6) deposition under analogous circumstances. The defendant in *Alcan* sought to depose the plaintiff's director of intellectual property about statements he made in the context of settlement negotiations indicating his belief that the defendant's alleged disparagement of the plaintiff's product was unintentional. The court found that the proponent of the discovery had failed to show how the testimony sought was relevant to the jury's determination of the defendant's state of mind, and that the testimony fell squarely within the exclusionary language and rationale of Fed.R.Evid. 408.[2] *Id.* at 405. The court also found that the statements engendering the deposition notice were made after consultation with counsel, and as such may be subject to a claim of privilege or protection as trial preparation material under Fed. R.Civ.P. 26(b)(5). *Id.* at 406.

Likewise, in this case Olin has failed to show that the deposition testimony sought is relevant to allocating contribution liability among private parties under CERCLA Section 113(f)(1). In addition, the proposed testimony falls squarely within the language of Fed.R.Evid. 408, barring the admission of settlement evidence to prove "liability for or invalidity of the claim or its amount" (*see* note 2, *infra*). Finally, the proposed testimony pertains entirely to matters discussed in the course of confidential communications between attorney and client pertaining to the approval of settlements with third-party defendants.

Accordingly, Solvent is entitled to a protective order barring the Rule 30(b)(6) deposition sought by Olin.

### CONCLUSION

Based on the foregoing, Solvent's motion (Item 1178) for a protective order under Fed.R.Civ.P. 26(c) is granted to the extent set forth herein. The information sought by Olin pursuant to its "Rule 30(b)(6) Deposition Notice and Rule 34 Request for Production of Documents," served on October 29, 2002, is not discoverable in this action, with the exception of the list of third-party defendants who have settled and the amount that each settling party paid (as agreed upon by the parties in open court). This list shall be produced in a manner calculated to comply with the March 1, 2003 fact discovery deadline recently approved by the court (*see* Item 1200).

So ordered.

---

**2.** Fed.R.Evid. 408 provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.